**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| In re: | Case No. 8-24-bk-00676-RCT |
| THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., | Chapter 11 |
| Debtor. | |
| _____ | |
| Michael Goldberg, *on behalf of* Javier Perales; Michael Passino *on behalf of* Allison Passino; and John Griffith *on behalf of* Jackson Griffith, individually and on behalf of all others similarly situated, | Adversary Pro. No. 8-25-ap-00347-RCT |
| Plaintiffs, | CLASS ACTION |
| v. | |
| AMERICAN MOMENTUM BANK, | |
| Defendant. | |
| _____/ | |

**DEFENDANT AMERICAN MOMENTUM BANK'S MOTION TO DISMISS**
**AND INCORPORATED MEMORANDUM OF LAW**

**NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING**

If you object to the relief requested in this paper you must file a response with the Clerk of Court at 801 North Florida Avenue, Tampa, Florida 33602 within twenty-one days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

**You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.**

142473113.1

Defendant American Momentum Bank ("AMB" or the "Bank") respectfully moves the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, for an order dismissing Plaintiffs' Class Action Complaint (the "Complaint"). AMB does not consent to the entry of final orders or judgment by the Bankruptcy Court or to a jury trial being conducted by the Bankruptcy Court. In support of its Motion to Dismiss, AMB respectfully shows as follows:

**INTRODUCTION AND BACKGROUND**

Plaintiffs attempt to hold AMB liable for the Center for Special Needs Trust Administration, Inc.'s (the "Center") breach of fiduciary duty in loaning $100 million from special needs trust ("SNT") accounts that it administered to Leo Govoni, the Center's founder, in approximately 2009-2012. The Complaint contains highly-specific and far-ranging allegations of impropriety, but for all of its rhetoric, it is deafeningly silent on the issue that matters most: whether AMB had *actual knowledge* of the Center's wrongful conduct.

The Complaint sets forth, in considerable detail, the years-long process by which the Center entered into various loan agreements with the Govoni-controlled Boston Finance Group ("BFG"), ultimately culminating in a $100 million loan to BFG. *See* Dkt. 1 at ¶¶ 114-52 (titled "The Center's Breaches of Fiduciary Duty"). Conspicuously missing from that part of the Complaint, however, is what role *the Bank* is alleged to have played. For example, Plaintiffs do not allege that AMB was involved in the documentation of the loans. Nor do Plaintiffs allege that AMB discussed the loans with the Center, BFG, or Govoni or that the Bank was involved in the underwriting of the loans. In fact, the Complaint does not even allege that AMB *knew* that the loans existed, much less that it knew that the loans were improper. Simply put, Plaintiffs do not (and cannot) articulate how AMB knew about, much less aided and abetted, the Center's alleged breach of fiduciary duty.

Critically, "Florida law does not require banking institutions to investigate transactions." *Lawrence v. Bank of Am., N.A.*, 455 Fed. App'x. 904, 907 (11th Cir. 2012). Accordingly, "[i]n the context of an aiding-and-abetting claim asserted against a bank, the 'knowledge' element requires a showing that the bank had *actual knowledge* of the alleged wrongdoing." *B-Smith Enterprises, LP v. Bank of Am., N.A.*, 2023 WL 2034419, at *2 (11th Cir. Feb. 16, 2023) (emphasis added). Under this standard, "[a]llegations that a bank 'should have known' of the alleged breach of fiduciary duty or 'that a bank disregarded "red flags" such as "atypical activities" on a customer's account [are] insufficient to establish knowledge." *Id.* (quoting *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 950 (11th Cir. 2014) (alteration in original)). Rather, actual knowledge generally requires allegations that the bank or its employees actively participated in the wrongdoing. *See, e.g.*, *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1097 (11th Cir. 2017) (finding actual knowledge where the fiduciary "paid [a senior bank employee] for her ongoing assistance in and cover up of his fraudulent scheme"). Anything less than active participation in the underlying scheme—even, for example, allegations that a bank "accepted worthless securities" containing "facial defects" from the plaintiff's investment advisor—"does not raise a plausible inference that [the bank] knew of [the fiduciary's] wrongdoing." *Lamm*, 749 F.3d at 950-51.

The Eleventh Circuit has urged courts to be "[m]indful of the potentially devastating impact aiding and abetting liability might have on commercial relationships." *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1009 (11th Cir. 1985). Here, Plaintiffs' allegations suggest, at most, that AMB *should have known* of the Center's alleged breach of fiduciary duty. Under Eleventh Circuit precedent, such allegations are insufficient to survive a motion to dismiss.

In addition, dismissal is appropriate for the independent reason that the Complaint affirmatively pleads into a dispositive limitations defense.

2

**LEGAL STANDARD**

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see* Fed. R. Bankr. P. 7012(b). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (cleaned up).

"When evaluating a motion to dismiss, the first step is to 'eliminate any allegations in the complaint that are merely legal conclusions.'" *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022) (citation omitted). "The second step is to assume the veracity of well-pleaded factual allegations and 'then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 934-35 (citation omitted). "[W]hen determining whether the complaint crosses 'the line between possibility and plausibility of entitlement to relief,' 'courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.'" *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022) (citations omitted).

**ARGUMENT**

Plaintiffs assert a single claim of aiding and abetting breach of fiduciary duty against the Bank. *See* Dkt. 1 at ¶¶ 329-37. Under Florida law, "[a] cause of action for aiding and abetting the breach of a fiduciary duty requires a plaintiff to establish," among other elements, "knowledge of the breach by the alleged aider and abettor." *Fonseca v. Taverna Imports, Inc.*, 212 So. 3d 431, 442 (Fla. 3d DCA 2017). The Complaint should be dismissed both because it does not plausibly allege actual knowledge of any breach and because the claim is barred by limitations.

**I.     Plaintiffs do not plausibly allege that AMB had actual knowledge of the Center's breach.**

**A.     A bank has knowledge of a breach of fiduciary duty only if it has "actual knowledge"; this requirement is strictly enforced.**

Under Florida law, the "knowledge" element presents an extremely high bar in aiding-and-abetting cases against banks. As the Eleventh Circuit has explained, a plaintiff must plausibly allege "that the bank had *actual knowledge* of the alleged wrongdoing." *B-Smith Enterprises*, 2023 WL 2034419, at *2 (emphasis added). "Allegations that a bank 'should have known' of the alleged breach of fiduciary duty or 'that a bank disregarded "red flags" such as "atypical activities" on a customer's account [are] insufficient.'" *Id.* (quoting *Lamm*, 749 F.3d at 950 (alteration in original)). In other words, "merely alleging that a bank should have known of a [breach of fiduciary duty] based solely on a series of purportedly atypical transactions is not sufficient to survive *Twombly*." *Perlman v. Wells Fargo Bank, N.A.*, 559 Fed. App'x 988, 993 (11th Cir. 2014).

*B-Smith Enterprises*—which, like this case, involved trust accounts—demonstrates how this strict standard is applied in practice. There, the plaintiff deposited funds in a trust account that its former lawyer ("Sherman") maintained at Bank of America ("BANA"), and the plaintiff sued the bank after the lawyer misappropriated those funds. 2023 WL 2034419, at *1. The district court dismissed the plaintiff's aiding and abetting breach of fiduciary duty claim, and the Eleventh Circuit affirmed. *Id.* The court "accept[ed] Plaintiff's allegation that … BANA knew that … Sherman owed a fiduciary duty to safeguard the funds in the Trust Account." *Id.* at *2. However, the plaintiff had "alleged no facts demonstrating *plausibly* that BANA had actual knowledge that Sherman was breaching that fiduciary duty." *Id.* (emphasis added). The court explained that Sherman's transfer of "funds from the Trust Account into the firm's Operating Account and into his Personal Account—by itself—demonstrates no *per se* wrongdoing." *Id.* "Plaintiff's conclusory allegations that the complained-of transfers were 'nonroutine' and inconsistent with supposed

4

'generally accepted banking practices' also fail to support a reasonable inference that [the bank] had actual knowledge of wrongdoing." *Id.* "Plaintiff's allegations assert 'at most' only that BANA 'should have known' about Sherman's misappropriation of funds and breach of fiduciary duty." *Id.* (quoting *Lamm*, 749 F.3d at 950). "Because Plaintiff failed to allege facts sufficient to support a reasonable inference that BANA had 'actual knowledge' of Sherman's wrongdoing, the district court concluded properly that Plaintiff's claim for aiding and abetting a breach of fiduciary duty was subject to dismissal." *Id.*

*Lamm v. State Street Bank* is also illustrative. In that case, Lamm granted his investment advisor ("Taurus") authority to invest assets that he held in two accounts at State Street, and State Street "accepted on behalf of Mr. Lamm pieces of paper purporting to be promissory notes and listed those notes on monthly account statements issued to Mr. Lamm." 749 F.3d at 941. However, "the purported promissory notes turned out to be worthless and resulted in just over $1 million in lost principal to Mr. Lamm." *Id.* at 942. Lamm then sued State Street for aiding and abetting breach of fiduciary duty. *Id.* The district court dismissed the claim, *id.*, and the Eleventh Circuit affirmed. The court explained that "the specific facts alleged—that State Street accepted worthless securities, some of which were not signed by the obligor, not payable to Mr. Lamm, or in default—at most show that State Street 'should have known' of Taurus' fraud and breach of fiduciary duty." *Id.* at 950. "State Street … was authorized to rely on Taurus' investment instructions and had no duty to scrutinize the security instruments it submitted. Thus, the fact that certain securities had facial defects, by itself, does not raise a plausible inference that State Street knew of Taurus' wrongdoing." *Id.* at 951.

Cases in which the Eleventh Circuit has determined that a plaintiff plausibly alleged that a bank had actual knowledge confirm that, in this context, actual knowledge is an extremely high

5

bar. For example, in *Chang v. JPMorgan Chase Bank*, Chang alleged "that Olga Padgett-Perdomo, a Bank vice president, knowingly assisted Charles Gordon in stealing money that Gordon's company, OPT Title and Escrow, Inc., had agreed hold in escrow in an account with the Bank." 845 F.3d at 1091. "More specifically, Chang alleged that Padgett-Perdomo (1) opened at the Bank an account for OPT Title that was labeled as an escrow account, even though OPT Title had not complied with the Bank's procedures for opening an escrow account; (2) wrote a letter overstating the balance in the escrow account after Gordon had stolen Chang's money from the account; *and (3) surreptitiously received $100,000 from Gordon.*" *Id.* (emphasis added). The Eleventh Circuit held that these allegations "support an inference that Padgett-Perdomo knew that Gordon was misappropriating money." *Id.* at 1097.

Thus, under Eleventh Circuit precedent, specific allegations that a senior bank employee is *actively participating* in a scheme to misappropriate the plaintiffs' funds are sufficient to allege a bank's actual knowledge of that scheme.[1] But almost anything less than active participation in the underlying scheme—including allegations that a bank failed to investigate atypical transactions, accepted investments with facial defects, or ignored the commingling of funds and other suspicious account activity—suggests, at most, only that the bank should have known about a misappropriation. And in such cases, an aiding and abetting breach of fiduciary duty claim against a bank must be dismissed. *See, e.g.*, *B-Smith Enterprises*, 2023 WL 2034419, at *2; *Lamm*, 749 F.3d at 950-51; *Perlman*, 559 Fed. App'x at 993-94; *Lawrence*, 455 Fed. App'x at 907.

---

[1] *See also, e.g., Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1181 (11th Cir. 2025) (actual knowledge plausibly alleged where the bank had fired an employee for being "directly involved in the fraud"); *Metrocity Holdings, LLC v. Bank of Am., N.A.*, 2023 WL 6064516, at *10 (S.D. Fla. Sept. 18, 2023) (actual knowledge plausibly alleged where a bank employee "knowingly issued false letters to cover up" the misappropriation of plaintiffs' funds); *cf. FW Distrib., LLC v. J.P. Morgan Chase Bank, N.A.*, 2025 WL 1330210, at *7 (S.D. Fla. May 7, 2025) (finding no actual knowledge where there were "no allegations that [the bank employee] 'made misrepresentations or otherwise actively engaged in wrongdoing'" (citation omitted)).

### B.    Plaintiffs have not plausibly alleged that AMB had actual knowledge of any breach of fiduciary duty.

Plaintiffs' allegations of AMB's actual knowledge of the Center's breach of fiduciary duty can be found in paragraph 333 of the Complaint. Plaintiffs allege that the Bank had actual knowledge because, *inter alia*, it (1) knew the Center held trust funds in its AMB accounts; (2) routinely transferred funds from SNT accounts at the Bank to Govoni's private businesses; and (3) held accounts for over 100 other Govoni-owned businesses. Dkt. 1. at ¶ 333. However, as explained below, none of the allegations listed in paragraph 333 amount to actual knowledge by the Bank that the Center breached any fiduciary duty that it owed to Plaintiffs.

### 1.    Knowledge that the Center's accounts were SNTs does not give AMB actual knowledge of any breach of fiduciary duty.

Plaintiffs allege that AMB knew that "[t]he Center accounts held at the Bank were SNTs." *Id.* at ¶ 333(a). But knowledge that the Center's accounts at the Bank were SNT accounts is not knowledge of a breach of fiduciary duty. Nothing more needs to be said about this allegation.

### 2.    Knowledge that the Center transferred funds from SNT accounts to Govoni-controlled accounts does not amount to actual knowledge of any breach of fiduciary duty.

Plaintiffs allege that AMB knew that "the Center routinely transferred funds from SNTs at the Bank to Govoni's private businesses, including BFG" and that "the Bank held accounts for over 100 other Govoni-owned or related entities which were obviously, on their faces, not trust accounts or trust-related." *Id.* at ¶ 333(b)-(c). Thus, Plaintiffs suggest, the Bank "was undoubtedly aware of the suspicious nature of the transactions." *Id.* at ¶ 155.

However, Eleventh Circuit precedent unequivocally holds that Plaintiffs' allegations that the Bank was aware of "suspicious" transactions do not give rise to a plausible inference of actual knowledge. *See, e.g.*, *Perlman*, 559 Fed. App'x at 993-94 (allegations that bank had knowledge of "a multitude of atypical transactions" including the "opening of various accounts" and "numerous

7

transfers amongst the accounts within short time periods" were "not sufficient to trigger any obligation by Wells Fargo to investigate").[2] This rule holds even when the atypical transactions are self-dealing in nature. *See B-Smith Enterprises*, 2023 WL 2034419, at *2 ("That Sherman transferred funds from the Trust Account into … his Personal Account … demonstrates no *per se* wrongdoing.").[3] Accordingly, Plaintiffs' allegation that AMB was aware of potentially suspicious transactions between the Center and Govoni is inadequate to state an aiding and abetting claim.

Plaintiffs attempt to distinguish these cases by arguing that "the Bank had the Beneficiaries' trust instruments" and therefore "knew that the Center was not authorized to loan trust funds to a business venture." Dkt. 1 at ¶ 86. This argument fails for at least three reasons.

First, Plaintiffs rely on "a list of 'Non-exclusive Examples of Appropriate *Distributions*'" to argue that "the Center was only authorized to *disburse* trust funds for these narrow purposes." *Id.* at ¶¶ 87, 89 (emphases added). But Plaintiffs' draw a false equivalence between the terms "distribution" and "disbursement." In the trust context, "distribution" refers to "[t]he cash or other property paid or credited to a *trust beneficiary*," DISTRIBUTION, Black's Law Dictionary (12th ed. 2024) (emphasis added), while "disbursement" is defined more generally as "[t]he act of paying out money, commonly from a fund or in settlement of a debt or account payable." DISBURSEMENT, Black's Law Dictionary (12th ed. 2024). In other words, the universe of authorized disbursements from a trust is necessarily broader than the universe of authorized

---

[2] *See also, e.g.*, *Lamm*, 749 F.3d at 950 ("Alleging that a bank disregarded "red flags" such as "atypical activities" on a customer's account is insufficient to establish knowledge."); *FW Distrib.*, 2025 WL 1330210, at *7 ("Plaintiff assumes that because Ms. Matos-Polit was intimately involved with the Halwanis' accounts, it would be virtually impossible for her not to have become aware of the obvious fraud taking place within the Halwanis' accounts. However, such inferences are not permissible to establish actual knowledge against a bank.").

[3] *See also, e.g.*, *Atlanta & St. A.B. Ry. Co. v. Barnes*, 95 F.2d 273, 275 (5th Cir. 1938) ("The bank may and should assume the customer's honesty and correct conduct of his business. That a trustee, with the bank's knowledge, deposits trust money in his individual account i[s] not always nor ipso facto a conversion of it."); *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1248 (M.D. Fla. 2013) ("Commingling of funds, *even where the bank knows that the customer holds the funds in a fiduciary or trust capacity*, is … insufficient to allege knowledge." (emphasis added)).

distributions, which can only go to beneficiaries. For this reason, AMB's alleged knowledge that certain transfers would not be authorized *distributions* does not equate to knowledge that the transfer would be a breach of fiduciary duty—as far as the Bank knew, the transfer could have been an authorized *disbursement* for expenses or investment.[4]

Second, Plaintiffs' argument that AMB knew that certain distributions were unauthorized relies on the "Irrevocable Declaration of Trust" that the Center executed for each SNT beneficiary. Dkt. 1 at ¶¶ 81, 87. But Plaintiffs allege that there are approximately *6,000 individual beneficiaries*, each of whom had an Irrevocable Declaration. *Id.* at ¶¶ 6, 81. Plaintiffs do not allege, and it cannot be reasonably inferred, that the 6,000 Irrevocable Declarations were identical.[5] Accordingly, Plaintiffs' suggestion that the Bank knew the details of restrictions contained in each of the 6,000 different Irrevocable Declarations and was able to scrutinize each transaction by the Center to determine whether it comported with the terms of *all 6,000 Irrevocable Declarations* is implausible, to put it mildly. Such an effort would have required exorbitant amounts of time and resources—a duty that is not imposed by Florida law, which "does not require banking institutions to investigate transactions." *Lawrence*, 455 Fed. App'x at 907.

Third, while Florida does not impose on banks a duty to investigate transactions, it is worth considering what the Bank *would have found* if it had investigated. Plaintiffs dedicate over 30 paragraphs to explaining how the Center meticulously documented its loans to BFG with all the formalities that one would expect in a legitimate commercial transaction: loan agreements, promissory notes, security agreements, credit agreements, personal guarantees, and written

---

[4] In fact, the Debtor's CRO attested to the fact that certain trusts were "allocated a portion of the [BFG] loan as an investment." Bkr. Dkt. 28 at ¶ 17; *see also Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. App'x 52, 53-54 (11th Cir. 2006) (district court properly took "judicial notice" of a complaint from another case when granting motion to dismiss because the complaint was "a public document").

[5] *See also* Dkt. 1 at ¶ 84 (admitting that various Irrevocable Declarations contained differing "purpose" language); *id.* at ¶ 87 (relying on language that only appears in "certain of the Irrevocable Declarations" and, even within this subset, is only "substantially similar").

9

142473113.1

consents, all signed by agents of the Center. *See* Dkt. 1 at ¶¶ 119-151. Accordingly, even if the Bank had investigated these transactions as Plaintiffs claim should have been done, it still would have had no reason to believe that the transactions were anything but authorized and proper.

### 3. Knowledge that the Center issued statements using AMB's logo does not establish actual knowledge of any breach of fiduciary duty.

Plaintiffs allege that the Bank knew that "the Center printed and issued Beneficiary account statements using Bank letterhead." *Id.* at ¶ 333(d). While Plaintiffs allege that the statements printed by the Center on AMB's letterhead were false, *see id.* at ¶ 275, *Plaintiffs never allege that AMB knew the statements were false*. Rather, Plaintiffs allege only that AMB (1) asked the Center to take the Bank's name off the statements and (2) declined to verify the information in the statements, since AMB had not generated the statements. *Id.* at ¶¶ 277-78. Alleging that the Center put AMB's logo on false account statements generated by the Center and that AMB subsequently declined to verify the information in documents that it did not create is a far cry from plausibly alleging that AMB actually knew the Center was misappropriating Plaintiffs' funds. *Cf. Chang*, 845 F.3d at 1097 (finding actual knowledge where it was *a bank employee*, not a third-party using bank letterhead, who "falsely represented the balance in the OPT Escrow Account"). The better inference from Plaintiffs' allegations is that AMB simply had no knowledge regarding whether the statements in these documents were true or false because it did not create the documents and had no duty to investigate its customers' transactions. *See Doe*, 29 F.4th at 686 ("[C]ourts may infer from the factual allegations in the complaint obvious alternative explanations.").

### 4. Knowledge that the Center paid for services not rendered to the Center does not give the Bank knowledge of any breach of fiduciary duty.

Plaintiffs allege that the Bank knew that "the Center routinely paid fees for services not rendered to the Center." Dkt. 1 at ¶ 333(g). But banks have no duty to ensure that "customers [are] spending their money wisely." *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 549 (Fla.

10

2d DCA 2003). ("We would radically alter the law of banking if we required banks to … make certain that their customers were spending their money wisely."). And as already discussed, "merely alleging that a bank should have known of a [breach] based solely on a series of purportedly atypical transactions is not sufficient." *Perlman*, 559 Fed. App'x at 993. This allegation does not give rise to an inference that AMB had actual knowledge of any breach.

### 5. Plaintiffs' allegations regarding individuals without signatory authority do not give AMB knowledge of any breach of fiduciary duty.

Finally, Plaintiffs allege that AMB knew that "individuals without signatory authority directed fund transfers from the Center's and Govoni's accounts," that "non-Center employees without signatory authority directed the Center to delete deposits from Center accounts," and that "Govoni continued to direct Center funds without signatory authority after he had resigned from the Center." Dkt. 1 at ¶ 333 (e)-(f), (h).

These allegations are completely irrelevant to the question of whether AMB had actual knowledge of the Center's alleged breach of fiduciary duty. Alleged knowledge that certain individuals who directed fund transfers do not have signatory authority is not the same thing as knowledge that those individuals are breaching a fiduciary duty through those fund transfers. At most, knowledge of transfers by non-signatories constitutes knowledge of a "red flag," which, of course, "is insufficient to establish knowledge." *Lamm*, 749 F.3d at 950.

In sum, Plaintiffs have plausibly alleged, at most, only that AMB *should have known* of a breach of fiduciary duty. Unlike aiding-and-abetting cases where the Eleventh Circuit has determined that actual knowledge was plausibly alleged, *see Chang*, 845 F.3d at 1096-97; *Otto Candies*, 137 F.4th at 1181-82, this case does not involve allegations that bank employees actively assisted in the misappropriation or actively misled the plaintiffs. Rather, Plaintiffs allege only that AMB ignored red flags and suspicious or atypical activity while providing the Center with routine

11

banking services. In the Eleventh Circuit, such allegations are inadequate to plausibly allege that the bank had *actual knowledge* of a breach of fiduciary duty. *See B-Smith Enterprises*, 2023 WL 2034419, at *2; *Lamm*, 749 F.3d at 950-51; *Perlman*, 559 Fed. App'x at 993-94.

### C. Plaintiffs rely on impermissible shotgun pleading rather than connecting specific Bank conduct to specific breaches of fiduciary duty.

For the foregoing reasons, Plaintiffs' specific allegations of actual knowledge fail to state a claim against AMB. The Complaint can be dismissed on this basis alone. However, it is also worth taking a step back to consider the bigger picture. Although the Complaint is 61 pages long, *see generally* Dkt. 1, Plaintiffs' actual claim against the Bank spans a mere two pages, *see id.* at ¶¶ 329-37. As just discussed, many of the allegations contained in these paragraphs are irrelevant to Plaintiffs' claim against AMB. This problem is even more pronounced in the rest of the Complaint, which attempts to paint a picture of general wrongdoing on the part of the Center and the Bank though innuendo, conclusory assertions, logical leaps, and cherry-picked details that are overwhelmingly unrelated to Plaintiffs' specific claim against the Bank. This will not do. Plaintiffs are required to allege that *AMB itself* had actual knowledge of the *specific* breach of fiduciary duty that allegedly harmed Plaintiffs. *See Fonseca*, 212 So. 3d at 442 (requiring "knowledge of *the* breach" (emphasis added)). Allegations that are unconnected to the Center's breach and/or the Bank's actions are simply irrelevant to Plaintiffs' claim.

Consider the Complaint's allegations relating to the Center's communications about loan balances. Plaintiffs extensively detail communications by and between the Center (through CFO Tracey Gregory) and BFG regarding loan balances, deficits, and the Center's handling of those balances. *See* Dkt. 1 at ¶¶ 190-203. However, the only allegation pertaining to the Bank containing "factual matter" is that the Center asked the Bank to transfer funds, which the Bank did "within a half hour." *Id.* at ¶ 196. Plaintiffs do not allege *any other* involvement by the Bank.

12

Other allegations regarding the Bank are even more divorced from any breach of fiduciary duty by the Center. For example, Plaintiffs detail a transaction wherein AMB allowed BFG to wire out $354,765 when BFG's account had a $221,514 available balance *and* a $500,000 check from the Center that had been deposited but not yet cleared. *Id.* at ¶¶ 288-93. While Plaintiffs characterize this activity as nefarious, it was in fact completely benign. Plaintiffs allege that the check was an "on-us check," meaning that it came from the Center's account *at the Bank*. *Id.* at ¶ 290. Thus, Bank personnel could easily confirm fund availability. *See Doe*, 29 F.4th at 686 ("[C]ourts may infer from the factual allegations in the complaint obvious alternative explanations." (citation omitted)). Plaintiffs do not allege there actually were insufficient funds in BFG's account or that the Center's check bounced. Instead, they invite surmise and suspicion that this harmless (and actually helpful) conduct supports liability.

Plaintiffs also describe an occasion in 2022 where the Bank deleted a deposited check that had been given to the Center to deposit "too early." *See* Dkt. 1 at ¶¶ 294-300. The Bank helped customers avoid an insufficient funds event by deleting a check so the Center could "hold off a day on depositing this check." *Id.* at ¶ 296. Again, Plaintiffs do not point to any actual harm caused by this occurrence, and they do not articulate what this occurrence in 2022 had to do with any breach of fiduciary duty by the Center.

In short, rather than connecting specific acts by the Bank to specific breaches of fiduciary duty by the Center and thereby providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), the Complaint contains 328 paragraphs of mostly irrelevant allegations, which are all incorporated by reference into Plaintiffs' claim against AMB. *See* Dkt. 1 at ¶ 329. Plaintiffs are apparently hoping that an amalgamation of allegations cherry-picked from a sixteen-year banking relationship will distract from a dearth of specific,

legally relevant allegations. However, this type of "shotgun pleading" is impermissible in the Eleventh Circuit. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322 (11th Cir. 2015) (condemning pleadings that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"). When ruling on AMB's motion to dismiss, the Court should disregard all allegations in the Complaint that are not connected both to the Bank *and* to a specific breach of fiduciary duty by the Center.

## II. Plaintiff's aiding and abetting claim is also barred by the statute of limitations.

"A statute of limitations defense may be raised on a motion to dismiss where it is clear from the face of the complaint that the statutory period has expired." *Mesones v. Estevez*, 2021 WL 3721324, at *2 n.2 (11th Cir. Aug. 23, 2021). The statute of limitations for aiding and abetting breach of fiduciary duty is four years. *See* Fla. Stat. § 95.11(3)(o); *see also Access Pictures, LLC v. Sony Pictures Home Entm't Inc.*, 2019 WL 12536021, at *3 (S.D. Fla. Nov. 12, 2019). "[U]nder Florida law, a cause of action generally accrues upon the *first* injury caused by another's wrongful act." *Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 784 F.3d 771, 779 (11th Cir. 2015) (emphasis in original). Plaintiffs allege that they first suffered injury in 2009. *See* Dkt. 1 at ¶ 18 (explaining that the Center's loan to Govoni was first paid out in 2009). Accordingly, the face of Plaintiffs' Complaint makes it clear that the limitations period for Plaintiffs' aiding and abetting claim expired in 2013—over a decade before this Complaint was filed. At the very latest, Plaintiffs' cause of action accrued in 2015, the year of the last loan-related transfer of funds from the Center to BFG that Plaintiffs have identified. *See* Dkt. 1 at ¶¶ 156, 270. Either way, the limitations period has long since expired.

Plaintiffs assert that their claims were tolled until and accrued on February 9, 2024 "[b]ecause the Plaintiffs … could not have reasonably discovered the facts constituting Defendants' violations until" that date. *Id.* at ¶ 318. However, under Florida law, "[a] cause of

14

action accrues when the last element constituting the cause of action occurs," Fla. Stat. § 95.031(1), and the narrow statutory exception that delays accrual until discovery for certain claims does not apply to breach of fiduciary duty claims. *See Davis v. Monahan*, 832 So. 2d 708, 709, 711 (Fla. 2002); *Access Pictures*, 2019 WL 12536021, at *3. Plaintiffs' claim accrued at the time of injury, not discovery, and is therefore barred by limitations.

## CONCLUSION

Plaintiffs and their counsel have had the opportunity to engage in an extensive investigation. Michael Goldberg, as Chapter 11 Trustee, has retained forensic accountants to perform reconstructions of the Center's and BFG's accounts, and the Complaint itself relies on voluminous communications, financial records, and more. Nonetheless, all Plaintiffs can plausibly allege is that AMB *should have known* about the Center's failure to fulfill its fiduciary duties. These allegations are inadequate to state a claim for aiding and abetting breach of fiduciary duty. Plaintiffs' aiding and abetting claim is also barred by the statute of limitations. Accordingly, the Court should dismiss Plaintiffs' Class Action Complaint.[6]

---

[6] AMB notes that the claims of Plaintiff Michael Goldberg, who stands in the shoes of the Center as Trustee of the SNTs and the Chapter 11 Trustee, *see* Dkt. 1 at ¶ 25, are almost certainly barred by the doctrine of *in pari delicto* (which also implicates standing). *See In re Fundamental Long Term Care, Inc.*, 507 B.R. 359, 384 (Bankr. M.D. Fla. 2014) ("Under the equitable doctrine of *in pari delicto,* a plaintiff is barred from asserting a claim if the plaintiff participated in the wrongdoing that was a substantial cause of the alleged damages."). AMB will raise this issue at a later date, if necessary; this motion focuses on arguments that apply to *all* Plaintiffs.

15

142473113.1

Respectfully submitted on November 10, 2025.

        Marcos Rosales
        TX Bar No. 24074979
        (Admitted *Pro Hac Vice*)
        mrosales@beckredden.com
        **BECK REDDEN LLP**
        1221 McKinney, Suite 4500
        Houston, TX 77010-2010
        Telephone: (713) 951-3700
        Facsimile: (713) 951-3720

        */s/ Donald R. Kirk*
        Donald R. Kirk
        FL Bar No. 105767
        dkirk@carltonfields.com
        J. Ryan Yant
        FL Bar No. 104849
        ryant@carltonfields.com
        **CARLTON FIELDS, PA**
        4221 W Boy Scout Boulevard, Suite 1000
        Tampa, FL 33607
        Telephone: (813) 229-4334
        Facsimile: (813) 229-4133

        *Counsel for Defendant American Momentum Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2025, I electronically filed a true and correct copy of the foregoing with the United States Bankruptcy Court for the Middle District of Florida using the Court's CM/ECF system, thereby serving all registered users in this case.

        /s/ Donald R. Kirk
        Donald R. Kirk