## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

In re:

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,

      Debtor.

_____

Michael Goldberg, *on behalf of* Javier
Perales; Michael Passino *on behalf of*
Allison Passino; and John Griffith *on behalf of*
Jackson Griffith, individually and on behalf of
all others similarly situated,

      Plaintiffs,

v.

AMERICAN MOMENTUM BANK,

      Defendant.

_____/

Case No. 8-24-bk-00676-RCT

Chapter 11

Adversary Pro. No. 8-25-ap-00347-RCT

CLASS ACTION

### THE PLAINTIFFS' RESPONSE IN OPPOSITION TO THE DEFENDANT'S
### MOTION TO STAY LITIGATION AND TO STAY DISCOVERY

The Plaintiffs—Michael Goldberg on behalf of Javier Perales, Michael Passino on behalf

of Allison Passino, and John Griffith on behalf of Jackson Griffith—have sued American

Momentum Bank for its role in a decade-long breach of fiduciary duty that resulted in over a

hundred million dollars' worth of harm to thousands of special needs trust beneficiaries. The Bank

is now attempting to stall this litigation from the starting gate, asking this Court to stay all

proceedings pending joinder of the Chapter 11 Trustee and stay discovery pending adjudication of

its motion to dismiss. *See generally* Motion to Stay [DE 18]. But the Bank fails to satisfy the

factors justifying a wholesale stay. *See Incarcerated Ent., LLC. v. Cox*, 2018 WL 5807650, at *2

1

(S.D. Fla. Nov. 6, 2018). And a stay of discovery pending a dispositive motion is only available when the motion is a "slam-dunk" that appears substantially likely to result "in the dismissal of an especially dubious claim[.]" *Griffin v. Internal Revenue Serv.*, 2023 WL 8878219, at *1 (S.D. Fla. Dec. 22, 2023). The Motion to Dismiss in this case falls far short of that standard. The Bank has offered no reason for this Court to derail the orderly progress of this case.

The series of recent motions filed by the Bank paints a puzzling picture. Aside from seeking to avoid discovery, the Bank simultaneously asks this Court to (1) grant relief from the automatic bankruptcy stay; (2) join the Chapter 11 Trustee; and (3) dismiss the litigation entirely. In other words, the Bank asks this Court to stop the case from proceeding until it can force another party to appear—to take part in litigation that it believes should be immediately dismissed. This patchwork relief makes little procedural sense, and the Bank is entitled to none of it.

First, as to a general stay: the Chapter 11 Trustee is not a necessary party to this litigation. The only proffered basis for his joinder is that the Bank "possesses secured indemnity and setoff claims against the bankruptcy estate" that the Bank asserts are "directly relate[d]" to the Plaintiffs' claim. Motion at 2. Setting aside the merits of this indemnity theory, the Bank offers not a single case to support the notion that a case ought be stayed to join a potential indemnitor. To the extent the Bank is concerned about duplicative discovery, the Plaintiffs have already suggested coordinated written discovery—and the Bank would not agree. That is, the Plaintiffs have offered a solution that avoids prejudice in this case *and* reduces the burdens of litigation on all parties, and the Bank rejected it.

Second, absent a "slam-dunk" dispositive motion, "[m]otions to stay discovery pending ruling on a dispositive motion are generally disfavored in this district." *Benchmark Int'l CSSA, LLC v. Burdi*, 2024 WL 1555006, at *1 (M.D. Fla. Apr. 10, 2024) (cleaned up). This high bar is

not met here. The Bank's Motion to Dismiss ignores *both* the majority of the Complaint's allegations *and* the "reasonable inference" and "general awareness" standards the Eleventh Circuit recently set out for pleading actual knowledge in an aiding and abetting case. *See Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1178 (11th Cir. 2025); *see also id.* at 1180. In reversing a dismissal of an aiding and abetting fraud claim (and others), the Eleventh Circuit observed that:

> The court failed to engage with the totality of the plaintiffs' allegations, ignored certain claims altogether, and flipped the presumption at the pleading stage on its head by reading inferences and uncertainties against the plaintiffs. The result was that rather than evaluating whether the plaintiffs had sufficiently pleaded their claims, the court effectively asked whether the plaintiffs had proven them. That's not the standard at the motion-to-dismiss stage.

*Id.* at 1200–01. The Bank conspicuously ignores this recent and binding statement of the pleading standard, relegating *Otto Candies* to a single footnote and creating the impression that an older, outdated, abrogated standard still controls. *See* Motion to Dismiss at 4–6 & n.1. Under the correct standard, the Motion to Dismiss is likely to fail. In any event, the Motion to Dismiss is not the type of "slam-dunk" required to warrant a stay.

Finally, the Plaintiffs will suffer concrete harm if this litigation is paused—while the Bank has done nothing to show that it will be unduly prejudiced if required to defend itself promptly. Absent this showing, the Bank cannot have the relief it seeks. *See Gov't of Virgin Islands v. Neadle*, 861 F. Supp. 1054, 1055 (M.D. Fla. 1994).

For all of these reasons, set forth in detail below, the Plaintiffs respectfully maintain that the Motion must be denied.

## I.  <u>Background</u>

The Plaintiffs filed their Class Action Complaint [DE 1] on October 8, 2025, and the Bank accepted service via email on October 9, 2025, *see* Certificate of Service [DE 9]. The same day, the Plaintiffs filed their Motion to Appoint Interim Class Counsel, which, with the support of the

Chapter 11 Trustee, seeks to appoint the law firm Kozyak Tropin & Throckmorton as the Plaintiffs' Interim Class Counsel. *See* Pls.' Mot. to Appoint Interim Class Counsel [DE 4].

Counsel for the parties have conferred several times on various matters relating to the litigation, to little avail. The Bank has rebuffed the Plaintiffs' efforts to hold the Meeting of the Parties pursuant to Local Rule 7001-1(h); rejected the Plaintiffs' proposal to commence limited written discovery, coordinated with the Chapter 11 Trustee; and opposed the Plaintiffs' simple motion for status conference. *See* Motion for Status Conference [DE 14] at 2–3. And now, the Bank has moved to stay discovery pending resolution of its Motion to Dismiss *and* to stay the entire case pending joinder of the Chapter 11 Trustee. All of this paints a picture of delay, raising serious concerns of prejudice and continuing harm for this uniquely vulnerable group of Plaintiffs.

The Plaintiffs seek to zealously advocate their case with reasonable and professional coordination among all interested parties. The Bank, on the other hand, seeks to shut down the orderly conduct of this litigation by asking this Court for unwarranted relief.

## II.    Legal Standard

While the Court indisputably "has broad discretion to stay proceedings as an incident to its power to control its own docket," *Clinton v. Jones*, 520 U.S. 681, 706 (1997), in exercising this discretion a district court ought consider the following factors: "(1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and on the court." *Incarcerated Ent., LLC v. Cox*, 2018 WL 5807650, at *2 (S.D. Fla. Nov. 6, 2018) (quoting *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010)). The moving party "bears the burden of demonstrating that [the requested stay] is appropriate." *Virgin Islands*, 861 F. Supp. at

1055. What's more, "if a stay would create hardship for a party, . . . then the movant must demonstrate that it would suffer hardship or inequity from going forward." *Ibid*.

When a defendant seeks a stay pending resolution of a motion to dismiss, "it is necessary for the court to 'take a preliminary peek' at the merits of the [dispositive motion] to see if it appears to be clearly meritorious and truly case dispositive." *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997). A dispositive motion only warrants a stay when the motion is a "slam-dunk" that appears substantially likely to result "in the dismissal of an especially dubious claim[.]" *Griffin*, 2023 WL 8878219 at *1. In considering the merits of the dispositive motion, the court "must also weigh the harm produced by a delay in discovery against the likely costs and burdens of proceeding with discovery." *Ibid.* (cleaned up). Ultimately, the moving party must shoulder the burden of "demonstrating [the stay's] necessity, appropriateness, and reasonableness." *Ray v. Spirit Airlines, Inc.*, 2012 WL 5471793, at *3 (S.D. Fla. Nov. 9, 2012); *see also Benchmark Int'l CSSA, LLC v. Burdi*, 2024 WL 1555006, at *1 (M.D. Fla. Apr. 10, 2024) (same).

## III.    Argument

The Bank offers two bases for this Court to stay the proceedings, both unavailing. First, the Bank seeks to stay the entire litigation pending joinder of the Chapter 11 Trustee. *See* Motion at 6–8. Second, the Bank asks this Court to stay discovery pending resolution of its Motion to Dismiss. *See id.* at 8–11. Neither form of relief is warranted here. The Bank has failed to shoulder its burden and the litigation should proceed apace.

### A.    The Bank's Desire to Join the Chapter 11 Trustee Provides No Justification for a Stay.

The Bank asks this Court to stay this litigation, and separately to grant it relief from the automatic stay, so that it may force the Chapter 11 Trustee to participate in this litigation on the Bank's schedule. *See* Motion at 6–8; Motion for Relief from Automatic Stay to Join Trustee in

5

Adversary Proceeding, Case No. 24-bk-00676 [DE 759]. All of this, the Bank maintains, is then likely to be dismissed in short order. *See* Motion to Dismiss [DE 17]. The Bank is not entitled to any of the relief it seeks. The Chapter 11 Trustee is not necessary to this litigation, and the Bank cannot force him to bring potential claims on its timeline—nor can it stall the Plaintiffs' pending claim while attempting to structure the litigation differently.

As an initial matter, the Chapter 11 Trustee is not a required party vis-à-vis the Plaintiffs' tort claim—a point the Bank appears to concede, because it offers no argument or law to the contrary. The law is clear that a potential indemnity claim "is of no consequence," because "the 'complete relief' provision of 19(a) does not concern any subsequent relief via contribution or indemnification for which the absent party might later be responsible." *DeWitt v. Daley*, 336 B.R. 552, 556 (S.D. Fla. 2006) (cleaned up); *see also Compania Chilena De Navegacion Interoceanica, S. A. v. D.H.C. Trucking, Inc.*, 2016 WL 1722425, *3 (S.D. Fla. April 29, 2016) ("The fact that [the defendant] may later have claims for indemnity or contribution against [a non-party] is of no consequence in this [Rule 19] analysis.").

Because the Chapter 11 Trustee *need* not be joined, the question is only whether this case *should* be delayed because the Bank would prefer it. The relevant factors weigh heavily against the Bank.

### 1.    *The Early Stage of Litigation*

First, the Court must consider the stage of the litigation. *See Incarcerated Ent.*, 2018 WL 5807650 at *2. The Plaintiffs agree this case is in early days; discovery has not yet begun, owing to the Bank's refusal. On the other hand, the Bank has already filed its Motion to Dismiss and the Plaintiffs have expended resources preparing their response in opposition—efforts that would be

undone and then duplicated if the Bank were to join the Chapter 11 Trustee, prompting new pleadings and new dispositive motion practice. At best, this factor weighs neutrally.

       2.    *Undue Prejudice*

Second, the law asks "whether a stay will unduly prejudice or tactically disadvantage the non-moving party[.]" *Ibid*. Indeed, it would. The Plaintiffs in this case are the beneficiaries of special needs trusts intended to fund the most basic essentials of life. They are, for the large part, permanently disabled and fully dependent on their trusts for support. Those trusts were looted and decimated by people in positions of trust and confidence: their trust administrator (the Debtor) and their Bank (the Defendant here). Every dollar matters, and every day matters. While the Plaintiffs are eager to move ahead efficiently, the Bank would prefer to drain further resources—including by the current flurry of scattershot motions—and obstruct the orderly progress into discovery. Courts across the nation regularly recognize the prejudice created by stays, "as witnesses become unavailable, memories fade, and evidence is lost with time." *Reed v. Costa Del Mar, Inc.*, 2019 WL 13551465, at *1 (M.D. Fla. Oct. 22, 2019) (agreeing that a stay would be prejudicial); *Colceriu v. Barbary*, 2021 WL 848155, at *2 (M.D. Fla. Mar. 5, 2021) ("The possible burden imposed on the defendants in responding to discovery is outweighed by the potential[ ] prejudice to the plaintiff if evidence is destroyed. Thus, the balance tips in favor of requiring discovery to go forward."); *Becker v. HBN Media, Inc.*, 314 F. Supp. 3d 1342, 1346 (S.D. Fla. 2018) (denying a stay where the defendant failed to "address the prejudice to Plaintiff and proposed class members from fading memories and potential loss of putative class data and evidence"); *Yeomans v. Forster & Howell, Inc.*, 2009 WL 4894792, at *1 (M.D. Ala. Dec. 11, 2009) (recognizing that a stay "increases the danger of evidence becoming lost and unfairly hamper[s]" the opposing party). The prejudice factor weighs heavily in the Plaintiffs' favor, and the Bank has not so much as attempted to show

that it, instead, would suffer undue hardship if the litigation proceeds. *See Virgin Islands*, 861 F. Supp. at 1055.

 3. *Simplification of Issues*

We ask next "whether a stay will simplify the issues in question and streamline the trial[.]" *Incarcerated Ent.*, 2018 WL 5807650 at *2. It will not. On the contrary, the Bank seeks a stay so that it can further complicate this case by joining unnecessary issues of indemnity into a single-count tort case. *See* Motion at 2–3. As it stands, this case asks one central question: did the Bank aid and abet the Debtor's breach of fiduciary duty? The Bank would prefer this case to ask that question, and also whether contracts between the Bank and the Debtor call for any indemnity or setoff; and whether the conditions sufficient to trigger such indemnity are satisfied; and whether the Bank's purported security interest in funds remains perfected after post-petition transfers. *See id.* at 3. Far from simplification, this represents a gross overcomplication that obstructs the Plaintiffs' right to pursue a timely remedy. This factor tips heavily in the Plaintiffs' favor, and against a stay.

 4. *Burdens of Litigation*

The final factor—"whether a stay will reduce the burden of litigation on the parties and on the court"—likewise weighs in favor of the Plaintiffs. *Incarcerated Ent.*, 2018 WL 5807650 at *2. The Bank's desired relief overcomplicates this matter rather than simplifying it. The Bank has offered no compelling rationale for joining the Chapter 11 Trustee, and the Trustee, indeed, has opposed the Bank's request for relief from the automatic stay. *See* Response to Motion for Relief from Automatic Stay to Join Trustee in Adversary Proceeding, Case No. 24-bk-00676 [DE 781]. That is, the Bank is already increasing the burdens of litigation on *their* terms while depriving the Plaintiffs of the opportunity to pursue their sole pending claim.

8

This Court has abundant tools at hand for streamlining proceedings and avoiding duplicative labor or expense: sequencing; targeted discovery protocols; coordination between this case and any potential dispute between the Bank and the Debtor; cross-use of discovery across matters; coordinated depositions; and so on. To be sure, the Plaintiffs have already volunteered such a coordinated effort and the Bank declined to discuss it.

Were the Court to grant a stay, the Plaintiffs would suffer real, concrete prejudice: delayed justice, evidentiary loss as witnesses' memories fade, continued harm as they wait for financial relief. The Bank has shown no countervailing hardship. In this context, a global standstill is not only unnecessary, but overtly counterproductive.

### B.    The Motion to Dismiss Is Likely to Fail and Does Not Meet the High Bar for a Stay of Discovery.

"A request to stay discovery pending the resolution of a motion [to dismiss] is rarely appropriate unless resolution of the motion to dismiss will dispose of the entire case." *Ray*, 2012 WL 5471793, at *1 (quoting *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006)). A stay of discovery is not justified if the motion "is not so clear 'on its face [that] there appears to be an immediate and clear possibility that it will be granted.'" *APR Energy, LLC v. Pakistan Power Resources, LLC*, 2009 WL 2762064, at *2 (M.D. Fla. Aug. 28, 2009) (quoting *Feldman*, 176 F.R.D. at 653). "To evaluate whether there is strong likelihood 'the dismissal motion will be granted and entirely eliminate the need for such discovery,' the district court must take a 'preliminary peek' at the merits of the motion." *Id.* (quoting *Feldman*, 176 F.R.D. at 652–53) (cleaned up). "The court must also weigh 'the harm produced by a delay in discovery' against 'the likely costs and burdens of proceeding with the discovery.'" *Id.* (quoting *Feldman*, 176 F.R.D. at 652). Courts are hesitant to stay discovery because "the delay and prolongation of discovery can

. . . unfairly hold up the prosecution of the case." *Id.* (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 136–69 (11th Cir. 1997); *see also Feldman*, 176 F.R.D. at 652–53).

1.    *Actual Knowledge*

The Bank's Motion to Dismiss attacks, nearly exclusively, the Complaint's allegations of actual knowledge. *See* Motion to Dismiss [DE 17] at 5–15. The argument is tenuous at best, and far from the "slam-dunk" required to justify a stay of discovery. *See Griffin*, 2023 WL 8878219 at *1. The Eleventh Circuit spoke plainly when it clarified the pleading standard for aiding and abetting claims just a few months ago: "A defendant has knowledge of an underlying fraud if it has a general awareness that its role was part of an overall improper activity." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1178 (11th Cir. 2025). And, "[i]n assessing a defendant's knowledge, [the court asks] whether the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant knew about the alleged fraud." *Id.* at 1180. The Complaint, as pled, certainly alleges facts from which one can draw the "reasonable inference" that the Bank had a "general awareness that its role was part of an overall improper activity."

The Complaint alleges that the Bank's own documents and correspondence establish actual knowledge of the Center's fiduciary status and duties. It states, for example, that the account opening documents identify the relevant accounts as "trusts," including pooled SNT subaccounts. *See, e.g.*, Complaint ¶¶ 262–65, 332. It recounts frequent correspondence from Bank employees inquiring about specific trust instruments and related documentation, confirming the Bank's actual knowledge of the fiduciary nature of the accounts. *See, e.g.*, *id.* ¶¶ 82, 101, 240, 260–61. And, the Complaint sets forth, the Bank even signed trust instruments as Custodial Trustee and engaged in extensive communications with the Center regarding the exact wording of these instruments. *See,*

*e.g.*, *id.* ¶¶ 2, 101, 256–61, 332. These facts alone make it implausible that the Bank was unaware of the Center's fiduciary duty to the beneficiaries.

The pleaded conduct of Bank employees—imputed to the Bank as a matter of law—shows actual knowledge of the Center's breaches, and of the scheme's basic mechanics. The Complaint explains how the Bank affirmatively permitted the Center to affix the Bank's logo to falsified account statements designed to obscure the ongoing theft from the beneficiaries and their caretakers. *See, e.g.*, *id.* ¶¶ 3, 98, 275–77, 312, 316. Underscoring the Bank's culpable knowledge, the Complaint details how the Bank only ceased this practice after inquiries that arose in relation to other litigation. *See, e.g.*, *id.* ¶¶ 275–80.

The Bank's relationship manager, Sherry Lilly, and other Bank employees repeatedly processed transfers from the Center to Govoni-controlled entities (e.g., BFG) and then onward to other Govoni entities—all within the Bank—while acknowledging that "all combined companies" presented "high exposure." *See, e.g.*, *id.* ¶¶ 269–74, 281–300, 308–13. This conduct reflects an institutional knowledge that trust funds were being funneled through a web of non-trust, Govoni-controlled companies.

The Complaint alleges that the Bank authorized wires and withdrawals from the trust accounts based on directions from individuals without signatory authority, including non-Center personnel, and solicited "approval" from a non-signatory (Todd Belisle) to move trust funds. *See, e.g.*, *id.* ¶ 307; *see also id.* ¶¶ 294–300. Likewise, the Bank deliberately lifted normal wire restrictions to allow BFG to wire funds that it *did not have*, based on a pending "on-us" check drawn from a Center account—and then "maintenance[d] the account back to wire on collected" to erase the trail. *See id.* ¶¶ 298–93. That sequence of events demonstrates not only knowledge of

the specific flow of trust funds to BFG, but also awareness that the Bank's standard controls inhibited the flow, prompting overrides to facilitate it.

Finally, the Complaint alleges that Bank employees—after more than a decade of this conduct—apologized and confessed that they had treated the Center and over one hundred Govoni entities as "one big company," acknowledging the Bank's longstanding practice of disregarding formal account separations. *See id.* ¶¶ 304–05. This is an admission that the Bank knew it was collapsing the legal separateness of a trustee and third-party borrowing entities while moving funds across lines that should have been firm.

All of this far surpasses *Otto Candies*'s requirement that the plaintiff set forth facts from which one can draw a "reasonable inference" of "general awareness."[1] There, the Eleventh Circuit confirmed that, when "the numbers [do] not add up," it "strains credulity" to claim that a "sophisticated financial institution . . . lacked awareness." *Otto Candies*, 137 F.4th at 1182. So too here. Avoiding this obvious outcome, the Bank bases its Motion to Dismiss entirely on outdated law, without acknowledging the seismic shift of *Otto Candies*. But the current, binding law controls—and under it, the Complaint will proceed.

### 2. Shotgun Pleading

As an afterthought, the Bank also claims the Complaint is a shotgun pleading. *See* Motion to Dismiss at 12–14. This is demonstrably false. The Plaintiffs allege one count of aiding and abetting breach of fiduciary duty. The underlying breach is a necessary element of the claim. Had the Plaintiffs *not* set forth fulsome allegations of the Debtor's breach, that would, indeed, be fodder for a motion to dismiss. No aspect of *Weiland* or its progeny forbids a plaintiff from pleading the

---

[1] It bears noting that, in *Otto Candies*, the Eleventh Circuit reached this conclusion on an aiding and abetting fraud claim—where Rule 9(b) sets the bar even higher than here. *See Otto Candies*, 137 F.4th at 1177–82.

necessary elements of a claim. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322 (11th Cir. 2015).

Suffice to say, the Motion to Dismiss is weak at best, and a far cry from a "slam-dunk." A stay of discovery is inappropriate at this juncture. *See Feldman*, 176 F.R.D. at 653.

### CONCLUSION

The Bank wants this litigation to stop. It wants to avoid discovery, and it wants to avoid answering for its tortious conduct. But it has offered this Court no basis to do so. The Motion should be denied in its entirety, and this case should proceed to discovery.

Respectfully submitted on November 19, 2025.

By: */s/* Meaghan Goldstein, Esq.
Meaghan Goldstein, Esq.
Florida Bar No. 1024796
mgoldstein@kttlaw.com
Tal J. Lifshitz, Esq.
Florida Bar No. 99519
tjl@kttlaw.com
Harley S. Tropin, Esq.
Florida Bar No. 241253
hst@kttlaw.com
Benjamin J. Widlanski, Esq.
Florida Bar No. 1010644
bwidlanski@kttlaw.com
Yarden (Jordan) Benatar
Florida Bar No. 1049274
jbenatar@kttlaw.com
**KOZYAK TROPIN & THROCKMORTON LLP**
2525 Ponce de Leon Blvd.
9th Floor
Coral Gables, Florida 33134
Telephone:    (305) 372-1800
Facsimile:    (305) 372-3508

*Counsel for the Plaintiffs and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 19, 2025, a true copy of the foregoing has been filed with the Clerk of the Court using CM/ECF and is served on all counsel or parties of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: <u>/s/ Meaghan Goldstein, Esq.</u>
       Meaghan Goldstein, Esq.