**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,

     Debtor.

_____

Michael Goldberg, *on behalf of* Javier
Perales; Michael Passino *on behalf of*
Allison Passino; and John Griffith *on
behalf of* Jackson Griffith, individually and
on behalf of all others similarly situated,

     Plaintiffs,

v.

AMERICAN MOMENTUM BANK,

     Defendant.
_____/

Case No. 8-24-bk-00676-RCT

Chapter 11

Ad. Pro. No. 8-25-ap-00347-RCT

CLASS ACTION

**DEFENDANT AMERICAN MOMENTUM BANK'S REPLY IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS [DOC. 17]**

## INTRODUCTION

The primary argument in Plaintiffs' Response is that the Eleventh Circuit's recent *Otto Candies* decision completely changed the law regarding the knowledge element of an aiding-and-abetting claim, rendering the cases cited in AMB's Motion obsolete. But *Otto Candies* held only that a *strong inference* of actual knowledge is not required, disapproving of a line of district court opinions, and that *Iqbal*'s well-known "reasonable inference" standard applies instead. *AMB has never invoked any "strong inference" standard.* To the contrary, the Eleventh Circuit cases cited in the Motion all apply the "reasonable inference" standard approved of in *Otto Candies*. Moreover, *Otto Candies* left undisturbed the rule announced in *Lamm v. State Street Bank* that allegations that a bank merely should have known about a breach of fiduciary duty, including allegations that a bank disregarded "red flags" such as "atypical activities," are insufficient to establish knowledge. Here, Plaintiffs have not alleged anything more than red flags. Accordingly, the Court cannot reasonably infer actual knowledge, and Plaintiffs' claim should be dismissed.

Notably, Plaintiffs have not identified *any* analogous case in which a court found that actual knowledge could be reasonably inferred. Instead, Plaintiffs rely almost entirely on *Otto Candies*, which has outrageous facts wholly unlike those alleged here. Plaintiffs also fail to distinguish the cases cited in the Motion in which the Eleventh Circuit found allegations of actual knowledge deficient—cases in which the court applied the reasonable inference standard.

The Response also contains a conspicuous factual omission. The Motion points out that the Complaint fails to allege numerous facts that would be essential to liability, including failing even to "allege that AMB *knew* that the loans [to Govoni] existed, much less that it knew that the loans were improper." Dkt. 17 at 1. The Response does not address this failure, arguing neither that AMB overlooked these allegations nor that such allegations are unnecessary. Plaintiffs have thus tacitly conceded that they do not have the facts necessary to support their claim against AMB.

1

This factual omission is particularly notable given this case's procedural posture. Plaintiffs are not shooting in the dark. Rather, as they explained at a hearing in this case on September 25, 2025, counsel for Plaintiff Michael Goldberg have spent "the better part of a year" preparing this Complaint, during which time they have "looked at tens of thousands of documents," "interviewed witnesses," and "consulted with experts." Main Case Dkt. 763, Hearing Tr. at 34:14-20. Moreover, as the Center's Chapter 11 Trustee, Goldberg also has access to the documents of the Center, the very wrongdoer that AMB is alleged to have aided. Thus, Plaintiffs have had every opportunity to take their best shot. They simply cannot state an aiding-and-abetting claim against AMB.

**ARGUMENT**

**I.      Plaintiffs do not plausibly allege that AMB had actual knowledge of the Center's breach.**

**A.      The Motion correctly describes the actual knowledge standard.**

As AMB explained in the Motion, the knowledge element presents a high bar in aiding-and-abetting cases against banks. The Eleventh Circuit has repeatedly held that allegations that a bank merely should have known of a breach of fiduciary duty, including allegations that a bank disregarded atypical transactions or other red flags, are insufficient. Rather, a plaintiff must plausibly allege that the bank had *actual* knowledge of the breach. Dkt. 17 at 4.

As far as AMB is aware, the Eleventh Circuit has found this standard satisfied *only* in cases where a bank employee was *actively participating* in the fraudulent scheme. In *Chang v. JPMorgan Chase Bank*, a bank employee both made knowing misrepresentations to the plaintiff and "surreptitiously received $100,000" from the fiduciary, while in *Otto Candies*, the bank had fired an employee for being "directly involved in the fraud." *See* Dkt. 17 at 6 & n.1 (citations omitted). These are the kinds of facts necessary for a reasonable inference of actual knowledge. No similar facts are alleged in this case, and Plaintiffs have not identified *any* cases in which the Eleventh Circuit held that lesser facts were sufficient.

Plaintiffs attempt to distract the Court from the lack of caselaw supporting their position by accusing AMB of misrepresenting the applicable legal standard. *See* Dkt. 40 at 7-8. According to Plaintiffs, AMB "disregards" *Otto Candies* "and instead relies on outdated and unpublished cases." *Id.* at 7. Plaintiffs insist that "the Bank errs in its reliance on" *B-Smith Enterprises*, *Perlman*, and *Lawrence* because they "are unpublished and, therefore, carry no weight." *Id.* at 8.

Plaintiffs' misrepresentation accusation falls flat. *Otto Candies* simply did not change the law that applies to this case. *Otto Candies* did disapprove of a line of *district court* cases that had "extended the PSLRA's pleading standard, requiring plaintiffs to plead a 'strong inference of actual knowledge regarding the underlying fraud' under Florida aiding-and-abetting law," holding instead that only a "reasonable inference" of actual knowledge is required. *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1179-80 (11th Cir. 2025). *But AMB has never argued that the strong inference standard adopted by some district courts applies to this case.* Rather, the Motion relies on *Eleventh Circuit* opinions that correctly use a reasonable inference standard (or the equivalent "plausible inference").[1] And *Otto Candies* only overruled district court opinions, *see id.*; it did not cast doubt on *any* of the Eleventh Circuit opinions cited in the Motion.

Not only did *Otto Candies* not purport to overrule the actual knowledge standard described in the Motion—it could not have done so. This is because, contrary to Plaintiffs' assertion that AMB is relying on "outdated and unpublished cases," Dkt. 40 at 7, the foundational case underlying the Motion's discussion of the actual knowledge standard is a *published* opinion: *Lamm v. State Street Bank & Trust*, 749 F.3d 938 (11th Cir. 2014). *See* Dkt. 17 at 2, 4, 5, 6, 8 n.2, 11, 12 (citing *Lamm*). *Lamm* squarely holds that allegations that a bank "should have known" about a

---

[1] *See* Dkt. 17 at 4-6; *see also Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 951 (11th Cir. 2014) ("plausible inference"); *B-Smith Enterprises, LP v. Bank of Am., N.A.*, 2023 WL 2034419, at *2 (11th Cir. Feb. 16, 2023) ("reasonable inference"); *Perlman v. Wells Fargo Bank, N.A.*, 559 Fed. Appx. 988, 993 (11th Cir. 2014) ("plausible inference"); *Lawrence v. Bank of Am., N.A.*, 455 Fed. Appx. 904, 907 (11th Cir. 2012) ("plausible inference").

breach of fiduciary duty, including allegations "that a bank disregarded 'red flags' such as 'atypical activities' on a customer's account," are "insufficient to establish knowledge." 749 F.3d at 950. There is no tension between this rule and anything in *Otto Candies*; but if there were, *Lamm* would control because it was decided first.[2]

The Court should also reject Plaintiffs' nonsensical claim that unpublished Eleventh Circuit opinions "carry no weight." Dkt. 40 at 8. "While unpublished opinions are not binding on this court, they may nonetheless be cited as persuasive authority." *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1138 & n.4 (11th Cir. 2004) (affirming based on "two unpublished opinions arising under similar factual scenarios"). In this case, *B-Smith Enterprises* provides a thorough and persuasive example of how the Eleventh Circuit applies the actual knowledge standard announced in *Lamm*, and *Lawrence* illustrates how the Eleventh Circuit applies its published *O'Halloran* decision and the Florida Supreme Court's *Emile* decision.[3] These cases have value to the Court even if they are unpublished—the Eleventh Circuit declined to publish them not because they are bad law but rather because they are straightforward applications of *well-established law*. The Court should follow the unpublished Eleventh Circuit opinions cited in the Motion (in addition to published decisions like *Lamm*) unless they contain legal errors—and other than asserting that AMB's caselaw is "outdated" and that the Bank is "ignoring *Otto Candies*," Dkt. 40 at 7, Plaintiffs have made no effort to show that the unpublished decisions cited in the Motion are erroneous.[4]

---

[2] *See MacPhee v. MiMedx Group, Inc.*, 73 F.4th 1220, 1250 (11th Cir. 2023) ("When faced with an intra-circuit split, we must apply the 'earliest case' rule, which states that 'when circuit authority is in conflict, a panel should look to the line of authority containing the earliest case, because a decision of a prior panel cannot be overturned by a later panel." (citation omitted)).

[3] *See B-Smith Enterprises*, 2023 WL 2034419, at *2 (citing *Lamm*); *Lawrence*, 455 Fed. Appx. at 907 (citing *Home Fed. Sav. & Loan Ass'n of Hollywood v. Emile,* 216 So.2d 443, 446 (Fla. 1968); *O'Halloran v. First Union Nat'l Bank of Fla.,* 350 F.3d 1197, 1205 (11th Cir. 2003)). Additionally, in *Perlman*, the Eleventh Circuit explained that unpublished opinions are persuasive authority and then applied *Lawrence*. *See* 559 Fed. Appx. at 992-94 & n.6.

[4] *Cf. United States v. Riley*, 706 Fed. Appx. 956, 964 (11th Cir. 2017) ("The [district] court's reliance on unpublished opinions of this Court was not improper, because the court understood the persuasive nature of the unpublished decisions, and Riley does not show that the court's analyses were erroneous.").

4

Plaintiffs have not attempted to make this showing because those opinions are *not* erroneous. As already explained, *Otto Candies* does not alter the actual knowledge standard articulated by *Lamm* and persuasively applied in the subsequent unpublished opinions cited in the Motion. Plaintiffs place significant weight *Otto Candies'* statement that "[a] defendant has knowledge of an underlying fraud if it has a general awareness that its role was part of an overall improper activity." 137 F.4th at 1178 (citation omitted); *see* Dkt. 40 at 6, 7, 8, 9, 11. But this language does not conflict with the Eleventh Circuit's long-standing rules that (1) the defendants' knowledge must be actual, not merely constructive; and (2) knowledge of red flags does not give rise to a reasonable inference of actual knowledge of improper activities. Moreover, *Otto Candies* reaffirmed the Supreme Court's edict that the required "reasonable inference" must come from "factual content" in the complaint. *See* 137 F.4th at 1180 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Thus, post-*Otto Candies*, a bank's knowledge can be general, but it still cannot be conclusorily pled, constructive, or reasonably inferred from knowledge of mere red flags.

A recent bankruptcy court opinion confirms that *Otto Candies* did not change the law that applies to this case. In *In re Aliera Companies, Inc.*, the court cited *Otto Candies* for the proposition that "to adequately plead knowledge, a plaintiff must allege factual content that allows the court to draw the reasonable inference that a defendant knew about the underlying tort." 2025 WL 2599852, at *35 (Bankr. N.D. Ga. Sept. 8, 2025) (cleaned up). The court then explained that "[t]he level of knowledge required to sustain a claim for fraud against an accomplice is actual knowledge" and cited *B-Smith Enterprises* and *Lamm* for the rule that "pleading that a bank knew of and ignored 'red flags' is not sufficient to show that the bank had actual knowledge of the fraud scheme." *Id.* at *35-36. *Aliera* removes any doubt that both *B-Smith Enterprises* and *Lamm* remain good law after *Otto Candies*. The actual knowledge standard described in the Motion is correct.

5

**B.** **Plaintiffs' allegations do not give rise of a reasonable inference of actual knowledge.**

The Supreme Court has held that that the "reasonable inference" standard, also called the "plausibility standard," "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. As AMB explained in its Motion, the Complaints' allegations do not give rise to a reasonable inference that AMB had actual knowledge of the Center's improper activities because Plaintiffs allege only that AMB *should have known* about the Center's breach of fiduciary duty based on red flags such as atypical account activity, which is insufficient under *Lamm*. *See* Dkt. 17 at 7-12. Nothing Plaintiffs say in the Response changes this conclusion.

As an initial matter, Plaintiffs argue that AMB "failed to engage with the totality" of their allegations. Dkt. 40 at 10 (quoting *Otto Candies*, 137 F.4th at 1200). But Plaintiffs do not identify any crucial allegations that AMB overlooked; to the contrary, they admit that "[t]he Bank identifies many of the allegations [supposedly] supporting a reasonable inference of its general awareness of an overall improper purpose." *Id.* at 9. Thus, this is not a case where the defendant "ignores allegations in the complaint" that establish knowledge. *Otto Candies*, 137 F.4th at 1198. Rather, Plaintiffs' insistence that the Complaint must be read "holistically," Dkt. 40 at 10, is really nothing more than a thinly-veiled argument that enough red flags and heated rhetoric can give rise to a reasonable inference of actual knowledge. This will not do. To survive AMB's Motion, Plaintiffs must have pled "factual content"—as opposed to insinuation and innuendo—that allows the court to infer more than a sheer possibility of actual knowledge. Plaintiffs have not done so.

The Response's attempt to demonstrate the sufficiency of Plaintiffs' actual knowledge allegations makes this point clear. Plaintiffs identified their actual knowledge allegations in pages 9-11 of the Response. AMB is not cherry-picking which allegations it addresses—these are the "totality" of Plaintiffs' relevant allegations. AMB will address each allegation in turn.

6

143014851.1

First, Plaintiffs' assert that AMB "knew that the Center's accounts were SNTs and, therefore, were fiduciary accounts." Dkt. 40 at 9. But knowledge of the existence of a fiduciary duty is not the same thing as knowledge of a breach of that duty—full stop.

Second, Plaintiffs assert that "the Bank affirmatively permitted the Center to affix the Bank's logo to falsified account statements." *Id.* at 10. This allegation is both vague—Plaintiffs do not describe any particular falsified statements—and untrue. More importantly, as AMB pointed out in the Motion, "*Plaintiffs never allege that AMB knew the statements were false.*" Dkt. 17 at 10 (citing Dkt. 1 at ¶¶ 275, 277-78). Plaintiffs do not challenge this statement in their Response. And if AMB did not know that the statements were false, then Plaintiffs' allegation that AMB permitted its logo to be affixed to account statements does not give rise to a reasonable inference that AMB had actual knowledge that the Center was breaching its fiduciary duty.[5]

Third, Plaintiffs assert that "Bank employees repeatedly and knowingly processed transfers from the Center's fiduciary accounts to Govoni-controlled entities (e.g., BFG) and then onward to other Govoni entities—all within the Bank—while acknowledging that 'all combined companies' presented 'high exposure.'" Dkt. 40 at 10-11. According to Plaintiffs, these "transactions … should have been impermissible." *Id.* at 1. *But as far as the Bank knew, these transactions were legitimate investments. See* Dkt. 17 at 9 & n.4. The suspicious thing would have been for the Center to leave trust funds in a bank account earning de minimis interest rather than investing those funds. More importantly, "a bank … has the right to assume that individuals who have the legal authority to handle [an] entity's accounts do not misuse the entity's funds." *O'Halloran*, 350 F.3d at 1205. Further, banks have no duty to ensure that "their customers [are] spending their money wisely." *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 549 (Fla. 2d DCA 2003). Indeed, "a

---

[5] *Cf. Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1097 (11th Cir. 2017) (finding actual knowledge where *a bank employee*, rather than a third-party using bank letterhead, "falsely represented the balance in the … Account").

143014851.1

refusal on the part of the bank to permit a withdrawal by a duly authorized representative of a corporate accountholder would no doubt breach the bank's deposit agreement with that accountholder." *O'Halloran*, 350 F.3d at 1205. Accordingly, Plaintiffs' allegation that AMB knowingly processed high exposure transactions between the Center and Govoni does not give rise to a reasonable inference of actual knowledge of the Center's wrongdoing.

Fourth, Plaintiffs assert (again falsely) that "the Bank authorized wires and withdrawals from the trust accounts based on directions from individuals without signatory authority, including non-Center personnel, and solicited 'approval' from a non-signatory (Todd Belisle) to move trust funds." Dkt. 40 at 11. The idea that this allegation demonstrates actual knowledge is silly. Plaintiffs' aiding-and-abetting claim necessarily depends on the proposition that AMB assisted *the Center* in carrying out *the Center's* wrongful conduct. It makes no sense to argue that AMB aided and abetted the Center's breach of the fiduciary duty by allowing unauthorized access to the Center's own funds. If the Bank actually allowed unauthorized access, any claim against AMB would belong to the Center, not Plaintiffs. And if (as is more likely) the Center approved of the transactions, then the Bank acted properly by processing them. *See O'Halloran*, 350 F.3d at 1205. Either way, Plaintiffs' non-signatory allegations do not support an inference of actual knowledge.

Fifth, Plaintiffs assert that "the Bank deliberately lifted normal wire restrictions to allow BFG to wire funds that it *did not have*, based on a pending 'on-us' check drawn from a Center account—and then 'maintenance[d] the account back to wire on collected' to erase the trail." Dkt. 40 at 11 (emphasis in original). But there was nothing nefarious about this activity—as AMB explained in its Motion, because "the check was an 'on-us check,' … it came from the Center's account *at the Bank*" and "Bank personnel could easily confirm fund availability." Dkt. 17 at 13. This allegation in no way supports an actual knowledge inference.

8

Plaintiffs offer no response to this "obvious alternative explanation[]" for the Bank's conduct.[6] Instead, Plaintiffs baldly assert that this allegation "demonstrates not only knowledge of the specific flow of trust funds to BFG, but also awareness that the Bank's standard controls inhibited the flow, prompting overrides to facilitate it." Dkt. 40 at 11. But AMB's alleged awareness that it was facilitating transactions from the Center to BFG is not awareness that these transactions constituted a breach of fiduciary duty. Again, AMB had a duty to execute the transactions that its customer directed it to execute, and it had no duty to ensure that its customer was spending its money wisely. *See O'Halloran*, 350 F.3d at 1205; *Freeman*, 865 So. 2d at 549.

Finally, Plaintiffs assert that "Bank employees—after more than a decade of this conduct—apologized and confessed that they had treated the Center and over one hundred Govoni entities as 'one big company,' acknowledging the Bank's longstanding practice of disregarding formal account separations." Dkt. 40 at 11 (citing Dkt. 1 at ¶¶ 304-05). According to Plaintiffs, "[t]his is an admission that the Bank knew it was collapsing the legal separateness of a trustee and third-party borrowing entities while moving funds across lines that should have been firm." *Id.*

However, knowledge that a trustee moves trust funds into his own accounts is *not* knowledge that the trustee is breaching its fiduciary duty. *See* Dkt. 17 at 8 & n.3 (collecting cases). Moreover, Plaintiffs' "one big company" allegations do not even relate to the flow of trust funds. Instead, these allegations relate to a "decade's worth of fees [allegedly] improperly assessed to the Center." *See* Dkt. 1 at ¶¶ 304-06. As with Plaintiffs' non-signatory allegations, AMB's alleged improper charging of fees to the Center has nothing to do with the Center's breach of fiduciary duty—again, if anyone would have been harmed by this alleged conduct, it is the Center.[7]

---

[6] *See Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022).

[7] Plaintiffs do not (and cannot) allege that the fees charged to the Center depleted assets held in trust because all bank charges were paid out of the Center's operating account, not any trust account. *See* Dkt. 1 at ¶ 11 ("[T]he Bank charged the account fees for dozens of Govoni's various business entities to the Center's corporate operating account.").

### C.    Eleventh Circuit caselaw confirms that Plaintiffs' actual knowledge allegations are insufficient.

As demonstrated in the Motion, Eleventh Circuit cases applying that court's strict actual knowledge standard confirm that Plaintiffs' allegations against AMB do not give rise to a reasonable inference of actual knowledge. *See* Dkt. 17 at 4-6 (discussing *Lamm*, *Chang*, *B-Smith Enterprises*, and *Otto Candies*); *see also id.* at 7-8 (discussing *Perlman*); *id.* at 11-12 (contrasting *Chang* and *Otto Candies* with *Lamm*, *B-Smith Enterprises*, *Perlman*, and this case).

In their Response, Plaintiffs rely primarily on *Otto Candies* to argue that they have sufficiently alleged actual knowledge. *See* Dkt. 40 at 11-12. But that case involved extreme facts that are utterly unlike Plaintiffs' allegations here. In *Otto Candies*, the bank had "fired an employee who the company 'believe[d] was directly involved in the fraud,'" and several other bank employees/agents were "involved in the scheme"; indeed, "[t]he Mexican government found that [bank] employees were *criminally responsible* for … 'knowing participation in the fraudulent scheme.'" 137 F.4th at 1181-82 (emphasis added). Here, Plaintiffs have not alleged that any AMB employees were directly involved in the Center's scheme, let alone criminally involved. Accordingly, *Otto Candies* offers no help to Plaintiffs. *See also* Dkt. 17 at 11.[8]

Plaintiffs also suggest that they have alleged actual knowledge because "the numbers [do] not add up." Dkt. 40 at 12 (citing *Otto Candies*, 137 F.4th at 1182; *Gilison v. Flagler Bank*, 303 So. 3d 999, 1003 (Fla. Dist. Ct. App. 2020)). But in both *Otto Candies* and *Gilison*, the "numbers" that the court was referring to were *actual accounting discrepancies* of which the bank was aware.[9]

---

[8] Plaintiffs do mention AMB employee Sherry Lilly by name, but they only allege that she "knowingly processed transfers from the Center's fiduciary accounts to Govoni-controlled entities." Dkt. 40 at 10. This action does not constitute involvement in the scheme—as explained above, AMB had a duty to execute the transactions that its customer directed it to execute. *See O'Halloran*, 350 F.3d at 1205.

[9] *See Otto Candies*, 137 F.4th at 1182 ("Consider the sheer volume of the disparities. OSA once requested a cash advance of $126 million on a contract paying $39 million annually. Another request asked for 'approximately $110 million on a contract that only paid $23 million annually.' Ultimately, OSA's requests exceeded the amount of the Pemex contracts by over $200 million."); *Gilison*, 303 So. 3d at 1003 ("[T]he bank was the only lender that had direct

Although Plaintiffs do not explain what "numbers" they are referring to in this case, they certainly never allege that AMB was aware of any discrepancies within the Center's financial records. And if Plaintiffs are attempting to suggest that there were too many red flags for AMB not to have known about the Center's scheme, *Lamm* forecloses such an argument.

Ultimately, *Lamm* alone is enough to resolve this case. As discussed in the Motion, in that case the court determined that the plaintiff had failed to plausibly allege actual knowledge even though the defendant bank had allegedly accepted worthless securities containing facial defects from the plaintiff's fiduciary. *See* 749 F.3d at 941-42, 950-51; *see also* Dkt. 17 at 5. Here, although Plaintiffs conclusorily assert that AMB had actual knowledge that the transactions between the Center and Govoni were improper, they conspicuously fail to allege either that the documentation underlying those transactions contained facial defects or even that AMB possessed a copy of that documentation. *See generally* Dkt. 1 at ¶¶ 119-151 (discussing loan documentation). If the plaintiff's allegations in *Lamm* were insufficient to establish actual knowledge, then Plaintiffs' allegations against AMB certainly are not enough to establish actual knowledge.

Tellingly, Plaintiffs relegate their entire discussion of *Lamm* to part of a footnote:

> The *Lamm* case does not change the outcome, either. In *Lamm*, the plaintiff failed to state a claim because he alleged only that the 'bank disregarded red flags' while carrying out routine transactions. Here, the Complaint specifically alleges both the Bank's actual knowledge and its affirmative acts of substantial assistance, *including atypical and improper transactions* contrary to law and contract.

Dkt. 40 at 12 n.5 (emphasis added) (citations omitted). In short, Plaintiffs response to *Lamm* is that they "specifically allege[d] both … actual knowledge" *and* "atypical and improper transactions." But of course, simply repeating a formulaic recitation cannot survive *Twombly* scrutiny. Moreover,

---

access to Chariots' financial records and the discrepancies within them. The accountants prepared Chariots' final balance sheets, which reflected Chariots' debt to the plaintiffs of $598,000 in 2016. However, the 2016 1099-INT, prepared by the accountants, reflected Chariots' payment to the plaintiffs of $409,511.18 in interest.").

11

Plaintiffs ignore that *Lamm* specifically held that "[a]lleging that a bank disregarded 'red flags' *such as 'atypical activities' on a customer's account* is insufficient to establish knowledge." 749 F.3d at 950 (emphasis added). Stated differently, Plaintiffs try to distinguish *Lamm* by arguing that this case involves atypical transactions rather than mere red flags, but *Lamm* makes clear that atypical transactions are the *paradigmatic example* of mere red flags. Plaintiffs have thus effectively admitted that under *Lamm*, they have failed to plausibly allege actual knowledge.

Finally, it is worth emphasizing that Plaintiffs never even attempt to distinguish *B-Smith Enterprises* and *Perlman*. Thus, Plaintiffs have tacitly conceded that if these cases remain good law after *Otto Candies* (which they do, for the reasons explained above), then they have not plausibly alleged actual knowledge.

### D.    The Court should disregard Plaintiffs' irrelevant allegations.

As explained in the Motion, the Complaint is filled with innuendo, conclusory assertions, logical leaps, and cherry-picked details that are unrelated to Plaintiffs' specific claim against AMB. *See* Dkt. 17 at 12-14. Plaintiffs respond that they were "required to plead sufficient facts to demonstrate the Center's breach of fiduciary duty." Dkt. 40 at 13. But many of the allegations in the Complaint do not relate to any breach of fiduciary duty by the Center at all, and many others describe events of which AMB is not even alleged to have had knowledge. *See* Dkt. 17 at 12-14.

Plaintiffs do not attempt to explain how the specific allegations criticized in this section of the Motion might in fact be relevant. They also admit that the Motion correctly identifies the allegations relevant to Plaintiffs' actual knowledge argument. *See* Dkt. 40 at 9. Plaintiffs have thus made another tacit concession—that much of their Complaint is irrelevant to their claim against AMB. To be clear, the Complaint should be dismissed on the merits, not on shotgun pleading grounds. The point is simply that the Court should disregard Plaintiffs' irrelevant allegations when ruling on the Motion.

**II.     Plaintiffs' aiding and abetting claim is also barred by the statute of limitations.**

Plaintiffs' aiding and abetting claim also should be dismissed because it is clear from the face of the Complaint that the limitations period has expired. *See* Dkt. 17 at 14-15.

Plaintiffs suggest that their claim did not accrue until 2022 because they complain of actions that occurred during that year. Dkt. 40 at 15-16. However, "under Florida law, a cause of action generally accrues upon the *first* injury caused by another's wrongful act." *Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 784 F.3d 771, 779 (11th Cir. 2015) (emphasis in original); *see also Access Pictures, LLC v. Sony Pictures Home Entm't Inc.*, 2019 WL 12536021, at *3 (S.D. Fla. Nov. 12, 2019). Accordingly, Plaintiffs' claim accrued in 2009. *See* Dkt. 17 at 14.

Plaintiffs' claim that the fraudulent concealment doctrine applies to this case is incorrect. The doctrine requires "active concealment" through "fraudulent means" unless the defendant had "a duty to disclose." *Nardone v. Reynolds*, 333 So. 2d 25, 37, 39 (Fla. 1976). Plaintiffs do not and cannot allege that AMB owed them a duty to disclose, and none of Plaintiffs' concealment allegations (Dkt. 40 at 17) amount to *active* concealment through *fraudulent* means. In brief: AMB is not alleged to have known that the Center's account statements were false, *see* Dkt. 17 at 10; AMB's alleged refusal to respond to inquiries self-evidently does not qualify as "active concealment"; and a bank does nothing wrong by processing "commingling transactions," *see id.* at 8 & n.3. *Cramer* is inapposite because there the defendant "had a duty to disclose." *Cramer v. Palm Ave. Partners, LLC*, 672 B.R. 517, 537 n.7 (M.D. Fla. 2025).

Plaintiffs also assert that the continuing tort doctrine applies to this case. Dkt. 40 at 18. Even if that doctrine did apply, Plaintiffs' cause of action would have accrued in 2015, the year of the last transfer of funds from the Center to BFG alleged in the Complaint, meaning that the limitations period expired in 2019. *See* Dkt. 17 at 14. Plaintiffs claim that the doctrine means that the limitations period is "open to this day" because of "the same facts giving rise to fraudulent

13

concealment," Dkt. 40 at 18, but again, none of that later alleged conduct was tortious. Regardless, the conduct described in the cited allegations occurred, at the latest, in 2018, *see* Dkt. 1 at ¶ 277 ("The Bank … rescinded its permission in 2018."), which is still well outside of the four-year limitations period.[10]

Finally, Plaintiffs' equitable estoppel argument fails for the same reason as their fraudulent concealment argument—AMB is not responsible for Plaintiffs' delayed knowledge of their injuries. And equitable tolling only applies "when the plaintiff has been misled or lulled into inaction, has in some extraordinary way been prevented from asserting his rights, or has timely asserted his rights mistakenly in the wrong forum." *Machules v. Dep't of Admin.*, 523 So. 2d 1132, 1134 (Fla. 1988). Again, AMB never misled Plaintiffs, and Plaintiffs have neither asserted their rights in the wrong forum nor been extraordinarily prevented from asserting their rights.

## CONCLUSION

The Eleventh Circuit has urged courts to be "[m]indful of the potentially devastating impact aiding and abetting liability might have on commercial relationships," especially when the "alleged aider and abettor" was acting "in the ordinary course of his business." *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1009-10 (11th Cir. 1985). This case does not involve allegations that bank employees actively assisted in the misappropriation or actively misled the plaintiffs. Plaintiffs allege only that AMB ignored red flags, suspicious account activity, and atypical transactions while providing the Center with routine banking services. These allegations are not enough to plausibly allege that AMB had *actual knowledge* of the Center's breach. The Complaint is also time-barred. For both of these reasons, the Court should grant AMB's Motion to Dismiss.

---

[10] In any event, the continuing tort doctrine only allows "a plaintiff [to] recover damages for tortious acts committed *within the limitations period* prior to the filing of suit." *Suarez v. City of Tampa*, 987 So. 2d 681, 685 (Fla. Dist. Ct. App. 2008) (emphasis added). Thus, at a minimum, the Court should dismiss Plaintiffs' claim to the extent that it is based on actions that occurred more than four years before the Center filed for bankruptcy protections.

143014851.1

Respectfully submitted on December 22, 2025.

Marcos Rosales
TX Bar No. 24074979
(Admitted *Pro Hac Vice*)
mrosales@beckredden.com
**BECK REDDEN LLP**
1221 McKinney, Suite 4500
Houston, TX  77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

*/s/ Donald R. Kirk*
Donald R. Kirk
FL Bar No. 105767
dkirk@carltonfields.com
J. Ryan Yant
FL Bar No. 104849
ryant@carltonfields.com
**CARLTON FIELDS, PA**
4221 W Boy Scout Boulevard, Suite 1000
Tampa, FL 33607
Telephone: (813) 229-4334
Facsimile: (813) 229-4133

*Counsel for Defendant American Momentum Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2025, I electronically filed a true and correct copy of the foregoing with the United States Bankruptcy Court for the Middle District of Florida using the Court's CM/ECF system, thereby serving all registered users in this case.

*/s/ Donald R. Kirk*
Donald R. Kirk

15

143014851.1