ORDERED.

Dated:  March 10, 2026

_____
Roberta A. Colton
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | |
| The Center for Special Needs Trust Administration, Inc., | Case No. 8:24-bk-00676-RCT<br>Chapter 11 |
| Debtor.<br>_____/ | |
| Michael Goldberg, *on behalf of* Javier Perales; Michael Passino *on behalf of* Allison Passino; and John Griffith *on behalf of* Jackson Griffith, individually and on behalf of all others similarly situated, | Adv. No. 8:25-ap-00347-RCT |
| Plaintiffs,<br>v. | |
| American Momentum Bank, | |
| Defendant.<br>_____/ | |

**ORDER DENYING MOTION TO DISMISS**

THIS PROCEEDING was considered at a hearing on February 24, 2026, on Defendant's Motion to Dismiss (Doc. 17), Plaintiffs' response (Doc. 40), and Defendant's reply (Doc. 50). As explained below, Defendant's motion is denied.

**I. Standard of Review**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)[1] evaluates the sufficiency of a complaint to determine whether it sets forth sufficient factual allegations to state a claim for relief. The court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff.[2] In evaluating the motion, the court must determine whether the complaint satisfies Rule 8(a)(2), which requires a short and plain statement of the claim showing that the pleader is entitled to relief and that the defendant is given fair notice of what the claim is and the grounds upon which it rests.[3] To survive a Rule 12(b) motion, the complaint must contain enough factual allegations, taken as true, to raise the right to relief above the speculative level.[4] In denying Defendant's motion to dismiss, this Court expresses no opinion on whether Plaintiffs will be able to prove any of the allegations in the complaint.

**II. Background**

Plaintiffs, on behalf of approximately 6,000 beneficiaries of special needs trusts ("SNT") held by Debtor The Center for Special Needs Trust Administration, Inc., assert an aiding and abetting breach of fiduciary duty claim against Defendant American Momentum Bank ("AMB") for its alleged role in the loss of their trust funds in their SNTs. Plaintiffs allege the following in their class action complaint.

Leo Govoni was a businessman who founded Debtor in 2000, together with John Staunton, for the apparent purpose of administering SNTs. Debtor deposited the beneficiaries' trust funds at AMB for safekeeping. AMB knew that Debtor's accounts held trust funds, because

---

[1] Rule 12(b)(6) is made applicable to adversary proceedings via Federal Rule of Bankruptcy Procedure 7012(b).
[2] *See Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1177 (11th Cir. 2025) (citation omitted).
[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).
[4] *See id*.

2

all the accounts were clearly labeled as such, and in some cases, AMB signed trust instruments as custodial trustee.[5]

Govoni also had over one-hundred-forty corporate accounts at AMB, including one for Boston Finance Group, LLC ("BFG"), a Govoni-controlled entity. Govoni caused Debtor to transfer approximately $100 million to BFG—through Debtor and BFG's accounts at AMB—under the guise of a loan that was restated and amended several times between 2009 and 2012. Once the money was in the BFG account at AMB, Govoni would transfer what he wanted to his other business accounts at AMB. AMB treated all Govoni's entities—his personal corporate entities and Debtor—as if they were one big company, despite the account documents reflecting different names and authorized signatories.[6]

AMB was aware of the suspicious nature of the transactions between Debtor's accounts and the Govoni corporate accounts. AMB—as the financial institution where all the accounts were established—knew that all the transferee companies were owned or controlled by Govoni based on the account opening documents and signatory authorizations. However, AMB continued processing transfers out of Debtor's accounts, facilitating the movement of trust funds into Govoni's hands.

The entire loan scheme was in violation of Debtor's fiduciary duties to the beneficiaries—duties AMB knew about, witnessed the breach of, and materially assisted in the breach of. Not only did AMB process suspicious transfers out of Debtor's accounts and treated all Govoni's accounts and Debtor's accounts as one big company, but AMB also assisted Debtor in covering up the transfers by allowing Debtor to use its logo (or letterhead) on its false documents given to the beneficiaries.

---

[5] Further, back in the earliest years of running Debtor, it is alleged that Govoni had conversations with AMB's President, Sam Davis, regarding Govoni's plan to set up a trust company. Thus, AMB knew—at a high, managerial level—what industry Govoni was involved in and offered assistance for its structure.
[6] Plaintiffs acknowledge in their complaint that until the latter half of 2021, AMB *believed* that all the Govoni accounts and Debtor's accounts were related to "one big company" and that Tracey Gregory and Govoni were in charge of all of it. (Doc. 1, ¶ 305).

Specifically, for each beneficiary, Debtor executed an Irrevocable Declaration of Trust. Under the Irrevocable Declarations, Debtor was required to provide, at least annually, to the beneficiary or the beneficiary's legal representative, a complete statement of the SNT assets and all the receipts, disbursements and distributions to or from the SNT occurring during the reporting period. AMB expressly permitted Debtor to affix AMB's logo (or letterhead) to falsified account statements that omitted any reference to the loans of the beneficiary's trust funds to Govoni's company, BFG.[7]

Plaintiffs specifically allege the following:

> 275. The Bank gave [Debtor] approval to use their logo on false account statements to be sent to Beneficiaries, duping Beneficiaries into thinking that the documents they received were official and sanctioned by the Bank.
>
> 276. Instead, the account statements were generated by FTAS [Fiduciary Tax & Accounting Services, LLC], the accounting firm controlled by Govoni and [John] Witeck. The statements misrepresented to Beneficiaries the amounts on deposit in their individual names, giving the false impression that each Beneficiary's funds were held segregated in a unique account at the Bank (when, in fact, they were not) and that no funds deposited in their accounts had been misdirected (when, in fact, they had).
>
> 277. The Bank permitted this to go on for years, and only rescinded its permission in 2018, one week after the successor trustee for a former . . . Beneficiary filed a complaint with a demand for accounting. Immediately after that lawsuit was filed, the Bank emailed [Tracey] Gregory[8] attaching a purported "Account Statement" for the beneficiary involved in the lawsuit. In the email, from Sandy Green, the Bank said: "Please see

---

[7] Doc. 1, ¶ 98.
[8] Tracey Gregory was employed by one of Govoni's entities, Boston Settlement Group, LLC ("BSG"), from 2008 until her resignation in 2020. Even though she was a BSG employee, Gregory performed work for Debtor, and Debtor paid a portion of her salary. Gregory was a member of Debtor's Board of Directors, served as Debtor's accounting manager, and had full access to and control over Debtor's accounts at AMB.

>attached, I believe this statement is being created by [Debtor] and Maureen is asking if you can remove the banks [sic] name since they are not generated by American Momentum Bank."

278. Govoni's daughter, Caitlin Janicki, was a settlement coordinator at [Debtor]. She forwarded the email that Gregory received from Sandy Green to Allyson Lazzara, an attorney barred in Florida who worked for Govoni's entities, and to Staunton. Janicki wrote:

>>I want to make you both aware that Tracey Gregory just got the attached e-mail from American Momentum Bank. She then reached out to our rep. at the bank who stated someone went through the Naples American Momentum branch asking for account information to be verified. They confirmed that no information was released but given that someone reached out to them to verify the statement they no longer feel comfortable with us producing these statements. They confirmed that they previously approved of statements such as this but they have asked we no longer produce statements with their name on it.

279. Janicki's email makes perfectly clear that she and [Debtor] were more concerned with the Bank *not* releasing accurate account information than with the impropriety of their own falsified statements on the Bank's letterhead.

280. Even after being confronted with evidence of [Debtor] leveraging the Bank's name and professional reputation as part of its scheme, the Bank took no steps to end the banking relationship. Nor did the Bank make any effort [to] prevent—and instead continued to aid and abet—[Debtor's] breaches of fiduciary duty.[9]

Plaintiffs contend that AMB participated in the scheme because at the peak, accounts related to Govoni represented about 8% of AMB's total assets under management, making AMB eager to cater to a lucrative client. By 2016, AMB had come to value Govoni's business so much that AMB's President of the Tampa Market (Porter Smith), along with the Assistant Vice

---

[9] Doc. 1, ¶ 275-80.

President and Management Sales Officer at the Tampa branch (Sherry Lilly, who served as a bank relationship manager to Debtor and to the Govoni's entities) had a meeting with Govoni just to thank him for his business.

### III. Motion to Dismiss

AMB moves to dismiss the complaint, arguing that it could not aid and abet Debtor's breach of fiduciary duty because: (1) AMB did not know that Debtor was breaching its fiduciary duty to the beneficiaries; and (2) Plaintiffs' claims are barred by the statute of limitations. While it remains to be proven whether AMB knew that Debtor was breaching its fiduciary duty to the beneficiaries, Plaintiffs have sufficiently alleged AMB's knowledge. Further, AMB is asserting an affirmative defense regarding the statute of limitations, which cannot be resolved at this time on the record in this case.

#### A. Knowledge

The sole claim asserted against AMB is aiding and abetting Debtor's breach of fiduciary duty. In Florida, the elements of the claim are: (1) an underlying violation by Debtor; (2) AMB's knowledge of Debtor's underlying violation; and (3) AMB's rendering of substantial assistance to Debtor in committing the wrongdoing.[10] By its motion to dismiss, AMB only challenges the second element—that Plaintiffs sufficiency alleged AMB's knowledge of Debtor's underlying violation, *i.e.,* Debtor's breach of fiduciary duty.

In evaluating Plaintiffs' allegations, the Court is mindful of the following:

> Florida . . . recognizes that as a general matter, "a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship." But there is an exception to this rule: a bank may be liable to a noncustomer for its customer's misappropriation when a fiduciary relationship exists between the customer and the noncustomer, the bank knows or ought to know

---

[10] *See Lawrence v. Bank of America, N.A.*, 455 Fed. Appx. 904, 906-07 (11th Cir. 2012) (citations omitted).

of the fiduciary relationship, and the bank has actual knowledge of its customer's misappropriation.[11]

However, "Florida law does not require banking institutions to investigate transactions."[12] Instead, banks have "the right to assume that individuals who have the legal authority to handle the entity's accounts do not misuse the entity's funds."[13] Thus, when a bank is providing only routine banking services, the bank is not required to investigate the account transactions.[14]

Ultimately, to be liable, the bank would have had to have actual knowledge of the underlying wrongdoing.[15] Merely alleging that the bank should have known of the underlying wrongdoing based solely on atypical transactions and "red flags" is not sufficient to allege actual knowledge.[16] Instead, the Eleventh Circuit has recently clarified the proper standard to be applied when assessing allegations of the defendant's knowledge—"whether 'the plaintiff pleads factual content that allows the court to draw the reasonable inference' that a defendant knew about the alleged [wrongdoing]."[17]

In this case, Plaintiffs have sufficiently alleged AMB's actual knowledge of Debtor's breach of fiduciary duty. Plaintiffs allege that AMB understood Debtor's business from the beginning and offered input at its inception on how to structure the trust arrangement. The complaint further alleges that AMB expressly permitted Debtor to affix AMB's logo (or

---

[11] *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094–95 (11th Cir. 2017) (internal citations omitted).
[12] *Lawrence*, 455 Fed. Appx. at 907 (citations omitted).
[13] *O'Halloran v. First Union Nat. Bank of Fla.*, 350 F.3d 1197, 1205 (11th Cir. 2003).
[14] *See Lawrence*, 455 Fed. Appx. at 907.
[15] *See id.*
[16] *See Lamm v. State Street Bank and Trust*, 749 F.3d 938, 950 (11th Cir. 2014) (citations omitted); *Perlman v. Wells Fargo Bank, N.A.*, 559 Fed. Appx. 988, 993-94 (11th Cir. 2014); *B-Smith Enterprises, LP v. Bank of America, N.A.*, 2023 WL 2034419, at *2 (11th Cir. Feb. 16, 2023); *Angell v. Allergan Sales, LLC*, 2019 WL 3958262, at *13 (M.D. Fla. Aug. 22, 2019) (explaining that allegations of actual knowledge differ from allegations that the defendant should have known; it "is the difference between *having* information from which one could or even should deduce the existence of [wrongdoing], and actually *making* that deduction").
[17] *Otto Candies,* 137 F.4th at 1180 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

letterhead) to falsified account statements that omitted any reference to the loans of trust funds to BFG.[18]  In fact, Plaintiffs allege that when a trustee for a former beneficiary asked AMB to verify the account information set forth on a statement sent by Debtor with AMB's logo (or letterhead) on it, AMB refused to release any information to the trustee.  Thus, AMB obtained possession of the falsified statement, had knowledge of its contents, and confirmed to Debtor that it did not release the actual account information.  At this stage of the proceedings, the Court must accept the factual allegations in the complaint as true and construe them in the light most favorable to Plaintiffs.  Accordingly, the Court denies AMB's motion to the extent it is based on Plaintiffs' failure to allege AMB's actual knowledge.

### B.  Statute of Limitations

AMB also argues that Plaintiffs' claim should be dismissed, because the allegations show that it is barred by the four-year statute of limitations of Florida Statute § 95.11(3)(o). Specifically, AMB contends that at the very latest, Plaintiffs' cause of action accrued in 2015, the year of the last loan-related transfer of funds from Debtor to BFG that Plaintiffs have identified in the complaint.  Plaintiffs did not file their adversary complaint until October 8, 2025—more than four years after the last loan-related transfer.

Plaintiffs respond that at least four different doctrines militate against a statute of limitations defense in this case—fraudulent concealment, continuing tort, equitable estoppel, and equitable tolling.  Additionally, Plaintiffs point out that the statute of limitations is an affirmative defense for a defendant to plead and is rarely appropriate for resolution on a motion to dismiss.

The Court agrees with Plaintiffs that it is not appropriate to resolve the statute of limitations affirmative defense at this stage of the proceedings.  As such, the Court denies as premature AMB's motion to the extent it is based on the statute of limitations.

---

[18] Doc. 1, ¶ 98, 275-80.

## IV. Conclusion

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss (Doc. 17) is **DENIED**. Defendant is directed to file a response to the complaint within 21 days after the entry of this order.

Service via CM/ECF