**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| In re: | Case No. 8-24-bk-00676-RCT |
| THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., | Chapter 11 |
| Debtor. | |

| | |
|---|---|
| Michael Goldberg, *on behalf of* Javier Perales; Michael Passino *on behalf of* Allison Passino; and John Griffith *on behalf of* Jackson Griffith, individually and on behalf of all others similarly situated, | Adversary Pro. No. 8:25-ap-00347-RCT |
| Plaintiffs, | |
| v. | |
| AMERICAN MOMENTUM BANK, | |
| Defendant. | |

_____/

**PLAINTIFFS' MOTION FOR LEAVE TO TAKE A**
**LIMITED RULE 30(b)(6) DEPOSITION ON CLASS CERTIFICATION**

---

**NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING**

If you object to the relief requested in this paper you must file a response with the Clerk of Court at 801 North Florida Avenue, Tampa, Florida 33602 within twenty-one days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.

**LOCAL RULE 7026-1(D) CERTIFICATION**

The parties have conferred on the matter raised in this Motion, and the Defendant does not agree to the relief sought. The Bank has rejected the Plaintiffs' request for a limited Rule 30(b)(6) deposition and maintains that the Plaintiffs may only take one such deposition.

**INTRODUCTION**

This class action case involves American Momentum Bank knowingly assisting in a scheme to siphon over $100,000,000 away from the beneficiaries of life-sustaining special needs trusts. The Plaintiffs have been steadily pursuing discovery since December 5, 2025, shortly after this Court denied the Bank's bid to stay the litigation. *See* **Exhibit A**, First RFP; **Exhibit B**, Responses and Objections. From the outset, the Plaintiffs have identified two critical categories of discovery for prioritization: the Bank's internal fraud alerts and its investigative files regarding suspicious activity in the relevant bank accounts.

Three months after receiving the First RFP, the Bank made a small production of alerts and investigative files. That production, along with an incomplete collection of Bank policies[1] produced on February 20, 2025, represents the entirety of the Bank's production to date. The Bank has produced *no* custodial files, which is alarming in light of the January 2027 discovery cutoff. But this meager initial production—and the even smaller subset that the Plaintiffs can read meaningfully, as set forth below—is devastating for the Bank. Possibly in recognition of this reality, the Bank is no longer cooperating with the Plaintiffs' discovery efforts. The Bank has refused the Plaintiffs' requests for explanations or clarification on the source or creation of key

---

[1] The Bank claims it does not have, or cannot locate, policies applicable to the relevant time period. In lieu, the Bank has produced some of its *current* policies, without conceding the relevance of these versions. The Bank's document retention practices and apparent disorganization are, to be sure, topics for exploration at a Rule 30(b)(6) deposition.

documents, taking the position that such matters may only be explored in a deposition. When the Plaintiffs asked for that deposition, however, the Bank threw up a new roadblock, claiming the Federal Rules do not allow for multiple Rule 30(b)(6) depositions in these circumstances.

Finding no cooperation from the Bank, the Plaintiffs now seek leave from this Court to take a limited Rule 30(b)(6) deposition on the discrete, narrow topics set forth in the proposed notice that the Bank rejected. *See* **Exhibit C**, Proposed Limited Rule 30(b)(6) Notice. This request is aligned with Bankruptcy Rule 1001's prioritization of "the just, speedy, and inexpensive determination of every case and proceeding":  it will allow the Plaintiffs to streamline written discovery, minimize scattershot depositions of other witnesses on the same topics, and crystallize class certification issues related to the Bank's policies, procedures, and practices. For the same reasons, the Plaintiffs' proposed Rule 30(b)(6) deposition will minimize burden on the Bank rather than increasing it.[2] Courts in this district (and beyond) regularly grant such relief. *See, e.g.*, *Bldg. Materials Corp. of Am. v. Henkel Corp.*, 2016 WL 11164043, at *1 (M.D. Fla. Apr. 29, 2016) ("While there is a question as to whether leave of Court is even required to take multiple Rule 30(b)(6) depositions, . . . the Court finds that leave should be granted and the deposition should proceed."); *Procaps S.A. v. Patheon Inc.*, 2015 WL 2090401, at *3 (S.D. Fla. May 5, 2015) ("The Undersigned is not deciding whether leave is required to take a second 30(b)(6) deposition under . . . Rule 30(a)(2)(A)(ii). Instead, the Undersigned is granting leave, which obviates the need to wrangle with this thorny question.").

---

[2] The Plaintiffs have proposed this limited Rule 30(b)(6) deposition at this early stage to narrow the scope of discovery moving forward and facilitate class certification. However, given the importance of the Rule 30(b)(6) deposition in this matter, the Plaintiffs do not intend to move forward with this deposition, at this stage, if the Court will not permit an additional future deposition. Thus, to the extent the Court is not inclined to grant the Plaintiffs' requested relief here, the Plaintiffs will not proceed with any Rule 30(b)(6) deposition at this time.

**STATUS OF DISCOVERY**

The Plaintiffs served their First RFP on December 5, 2025; the Bank served its Responses and Objections on January 16, 2026; and the Plaintiffs promptly invited a meet and confer call to begin working through issues. The parties have continued to confer regularly. At the February 24, 2026, hearing, Plaintiffs' counsel expressed concerns about the pace of production based on the status as of that date. *See* **Exhibit D**, Feb. 24, 2026, Hearing Transcript, at 18:22–19:13. Those fears are now coming to fruition. While the Bank has continued to confer and has nominally committed to producing much of the discovery the Plaintiffs seek, its productions have been virtually nonexistent: the Bank has made just two limited productions totaling 2,537 documents.[3] As relevant here, the production includes a small number of spreadsheets of data purporting to represent account alerts and other account history—an item the Plaintiffs identified as high-priority from the parties' first meet and confer discussion.

Meanwhile, a pattern has now emerged by which, each time the Plaintiffs ask for an update on the Bank's outstanding obligations, the Bank suggests that its resources are too limited to perform more than one litigation task at a time. The Bank has been on notice of the documents it needed to compile and review since, at the latest, February 2024 when another class action was filed against it relating to the same course of conduct.[4] And in this case, the Bank has now had

---

[3] This is in stark contrast to the 70,484 documents produced to date by the Class Plaintiffs and the Trustee. The Bank, to be clear, has produced zero custodial documents. And, while it has *repeatedly* committed to making a substantial custodial production in short order, it has also *repeatedly* claimed that any additional request from the Plaintiffs—such as for the remaining Bank policies— will delay the custodial production further.

[4] This earlier matter, *Chamberlin v. Boston Finance Group, LLC, et al.*, Case No. 24-cv-00438, ran afoul of this Court's automatic bankruptcy stay and was subsequently declared void ab initio. *See In re: The Center for Special Needs Trust Administration, Inc.*, Case No. 24-bk-00676, Order (I) Granting Chapter 11 Trustee's Motion to Enforce Automatic Stay; and (II) Denying as Moot American Momentum Bank's Motion for Relief from the Automatic Stay [DE 314] at 14. However, the void-ab-initio ruling came six months into the life of the *Chamberlin* case, *after* the

more than five months to collect, and three months to review, custodial documents. Nevertheless, the Bank now claims that the Plaintiffs' request for alerts and policies poses a delay on custodial production. What's more, the volume of custodial documents for collection and review is already artificially limited, as the Bank says it has deleted, in its normal course, all ESI from before 2019. Against all this—lengthy advance notice, a First RFP served more than 100 days ago, two law firms of substantial size—and in a case of this magnitude and importance, the Plaintiffs cannot simply accept that the Bank is incapable of managing multiple discovery tasks in a timely fashion.

This is the backdrop against which the Plaintiffs received the Bank's bait-and-switch by which they told the Plaintiffs "take a deposition" and then refused the deposition. The Plaintiffs are committed to continuing efforts to resolve disputes without imposing additional burdens on the Court. Nevertheless, given the Bank's refusal to proceed at an acceptable pace and outright rejection of reasonable, practical requests, Court intervention is required.

## **ARGUMENT**

District courts in the Eleventh Circuit routinely grant leave for multiple Rule 30(b)(6) depositions.[5] *See, e.g.*, *Bldg. Materials Corp*, 2016 WL 11164043, at *1 ("[T]he Court finds that

---

Bank filed two motion to dismiss. *See Chamberlin*, Case No. 24-cv-00438, American Momentum Bank's Motions to Dismiss [DEs 15, 39]. That is to say, it would be concerning to think the Bank had not already collected the relevant documents long before receiving the Plaintiffs' First RFP in this case.

[5] To be sure, it is not even clear that leave is required for an additional Rule 30(b)(6) deposition. While Rule 30(a)(2)(A)(ii) provides that a party must obtain leave of court to re-depose a witness who has already testified, "there is nothing in the text of Rule 30(b)(6) . . . which incorporates the requirements of Rule 30(a)(2)(A)(ii)." *Bldg. Materials Corp*, 2016 WL 11164043, at *1; *see also*, *e.g.*, *Quality Aero Tech., Inc. v. Telemetrie Elektronik GmbH*, 212 F.R.D. 313, 319 (E.D.N.C. 2002) ("Further, there is no aspect of the Rules which either restricts a party to a single 30(b)(6) deposition or restricts the allotted time for taking a 30(b)(6) deposition."). Courts in the Eleventh Circuit have opted to grant leave without wading into this question. *See, e.g.*, *Bldg. Materials Corp*, 2016 WL 11164043, at *1; *Procaps*, 2015 WL 2090401, at *3.

leave should be granted and the deposition should proceed."); *Procaps*, 2015 WL 2090401, at *3 (granting leave for multiple Rule 30(b)(6) depositions). While leave requires a fact-intensive inquiry, the Plaintiffs easily meet the bar. *See Procaps*, 2015 WL 2090401, at *4. Leave must be "consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. P. 30(a)(2). Rule 26 counsels against leave only where the desired discovery "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or where "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(i)–(ii). This Court should find cause to grant leave here and allow the Plaintiffs to take a limited Rule 30(b)(6) deposition now, with other topics to follow at another Rule 30(b)(6) deposition in due course.

Salient documents in the Bank's production are indecipherable to the Plaintiffs because they are full of internal codes, abbreviations, and shorthand. *See, e.g.*, AMB_0038402.[6] Further, the metadata reveals (and the Bank has conceded) that these spreadsheets were created for this litigation rather than in the ordinary course. *See, e.g.*, **Exhibit E**, AMB_0038402 Coversheet (filename reflects February 6, 2026, date).

The Bank produced these documents in response to the Plaintiffs' Request for "[a]ll fraud detection alerts, anti-money laundering alerts, or their equivalent that pertain to the Relevant Accounts" and all "Documents and Communications pertaining to any investigation by Your anti-money laundering department (or its equivalent) of alerts regarding the Center, Govoni, Gregory,

---

[6] The Bank has designated this and similar documents as "Confidential." The Plaintiffs are evaluating the propriety of this confidentiality designation, and in the event that the parties cannot agree on the removal of the designation, the Plaintiffs will take whatever steps necessary to provide a copy to the Court in compliance with the parties' confidentiality agreement.

Belisle, Staunton, Witeck, Janicki, LJ, any Govoni Business Entity, or any Relevant Account."[7] *See* **Exhibit A**, First RFP Nos. 9, 11.

In an attempt to streamline discovery and avoid additional requests and interrogatories—both of which would likely result in objections and further litigation—the Plaintiffs asked the Bank to explain where the compiled data came from. For example, the Plaintiffs asked whether there is a specific document or program from which each line on the spreadsheets is derived, and what the internal codes peppering the spreadsheets mean. The Bank took the position that these are deposition questions and declined to clarify the sources of the data or the meaning of the internal shorthand. Because these documents are crucial to the Plaintiffs' case, understanding their origins and contents will narrow future discovery needs and reduce anticipated disputes, along with informing issues of class certification.[8] On this practical rationale, the Plaintiffs proposed that they take an initial, limited Rule 30(b)(6) deposition tailored only to matters relevant to understanding these documents the Bank created for the litigation. The Plaintiffs attached a draft Rule 30(b)(6) notice identifying the narrow topics they intend to inquire about. *See* **Exhibit C**, Proposed Limited Rule 30(b)(6) Notice. The Bank rejected this proposal.

The topics listed in the Proposed Notice are narrowly tailored and eminently reasonable, geared towards the dual purposes of giving the Plaintiffs a basis to understand the Bank's cryptic spreadsheets and exploring questions of commonality for class certification. For example, the

---

[7] "Relevant Accounts" are defined to mean "any business account, trust, depository or other account, held in the name of, for the benefit of, or on behalf of, any of the Govoni Business Entities, the Center, any Center Beneficiary, Govoni, Gregory, Belisle, Staunton, Witeck, Janicki, or LJ."

[8] These documents speak to common questions including, for example, the Bank's standard policies and practices relating to the Bank Secrecy Act and other account monitoring obligations.

Plaintiffs seek to inquire into the Bank's organizational structure;[9] its policies, procedures, and practices related to various compliance programs, federal statutes and regulations, and account monitoring systems; fraud alerts and anti-money laundering alerts; practices for reviewing or auditing customer accounts; risk assessment procedures and due diligence procedures; document retention policies; and litigation hold policies. *See id.* These topics are essential to deciphering the Bank's spreadsheets, understanding how they were created (in light of their February 2026 metadata), and understanding what additional documents the Plaintiffs ought seek in future requests, given that the spreadsheets are ad hoc compilations of data pulled from unknown sources. What's more, these topics inform matters of commonality for the Plaintiffs' forthcoming motion for class certification. The Bank *will* have to answer to the Plaintiffs at some point. Of that, there is no doubt. The question is simply whether it will do so now—or whether it will spend untold additional time and expense on more document requests, more interrogatories, and more individual depositions before doing so.

Absent the ability to take a limited Rule 30(b)(6) deposition now, the Plaintiffs will have no choice but to take this latter, more obtrusive course. The Plaintiffs will, if necessary, serve more document requests and interrogatories seeking explanations as to how the spreadsheets were created and what the internal coding means, only to then take a later deposition on the same topics. That makes little practical or economic sense and is not in keeping with the spirit or letter of Rule 26 or Bankruptcy Rule 1001. In contrast, a limited Rule 30(b)(6) deposition would not be "unreasonably cumulative or duplicative," as the proposed topics will not be replicated in any other Rule 30(b)(6) notice during this case. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). And the desired discovery

---

[9] The Plaintiffs asked the Bank for an organizational chart. This too, according to the Bank, is a deposition question and not a basic litigation courtesy.

cannot be obtained in any other way that is "more convenient, less burdensome, or less expensive." *See id.* On the contrary, the Plaintiffs' alternative means of gathering the relevant discovery are decidedly *less* convenient, *more* burdensome, and *more* expensive than a single deposition of limited scope and duration. Indeed, the Bank has already voiced repeated concerns about the expense of the written discovery to date.

To be sure, the Bank's reluctance to spend time or money defending itself is no reason to escape reasonable and proportional discovery. In the *3M Combat Arms Earplug* litigation, for example—the largest multi-district litigation in American history, involving claims from nearly 300,000 veterans and military personnel—3M protested that it was unable to comply with its discovery obligations on the court's accelerated timeline. *See In re 3M Combat Arms*, 2019 WL 5065194, at *5. The litigation centered on defects in 3M's Combat Arms Earplugs, Version 2, which resulted in serious hearing damage. In discovery, the plaintiffs sought documents relating to six other models of 3M earplugs, including documents reflecting designs, product complaints, packaging, development, and testing. *See id.* at *1. 3M objected that this discovery was irrelevant, disproportionate, and unduly burdensome, and went so far as to file a declaration from counsel attesting that 3M "cannot complete the steps necessary to produce the additional information" by the discovery cutoff. *Id*. at *4–5.

The court was unmoved and noted that, while it had "no doubt that additional time (and expense) will be necessary to produce the additional documents," when taking into account "the amount in controversy[,]. . . Defendants' resources[,] and the likely benefit of the additional limited categories of discovery . . . the benefit far outweighs the burden and expense of producing the additional discovery." *Id*. at *5. Accordingly, the court compelled the production 3M was attempting to avoid. *Id*. at *5–6.

So too here, the Bank cannot avoid discovery—which *the Bank* is needlessly multiplying—for the simple reason that it costs money to allocate additional resources needed for compliance. In any event, the Plaintiffs' proposed Rule 30(b)(6) deposition is the most efficient and economical way to take this discovery, to which they are entitled.

Accordingly, this Court should adopt the same approach of other courts in this Circuit and, without needing to determine whether leave is even required in these circumstances, grant the Plaintiffs leave to take a preliminary Rule 30(b)(6) deposition limited to topics aimed at understanding the account spreadsheets and answering common questions relevant to class certification. *See, e.g.*, *Bldg. Materials Corp.*, 2016 WL 11164043, at *1; *Procaps*, 2015 WL 2090401, at *3.

### CONCLUSION

The Bank is stonewalling the Plaintiffs in their quest to access and comprehend bank alerts—a crucial feature of any banking-related litigation. The Plaintiffs flagged their Request for bank alerts as a high-priority item; the Bank produced indecipherable spreadsheets that were created for the litigation; the Bank refused to provide any backup source material *or* means of understanding the internal coding; the Bank took the position that this is all deposition fodder; and then the Bank rejected the Plaintiffs' request for a Rule 30(b)(6) deposition on these limited topics. The Bank's answer cannot be "no" on all fronts. Accordingly, the Plaintiffs respectfully request that this Court enter an order granting leave for a limited Rule 30(b)(6) deposition as described in the Plaintiffs' Proposed Notice.

Respectfully submitted on March 23, 2026.

By: */s/ Tal J. Lifshitz, Esq.*
Tal J. Lifshitz, Esq.
Florida Bar No. 99519

tjl@kttlaw.com
Benjamin J. Widlanski, Esq.
Florida Bar No. 1010644
bwidlanski@kttlaw.com
Meaghan Goldstein, Esq.
Florida Bar No. 1024796
mgoldstein@kttlaw.com
Yarden (Jordan) Benatar
Florida Bar No. 1049274
jbenatar@kttlaw.com
**KOZYAK TROPIN &
THROCKMORTON LLP**
2525 Ponce de Leon Blvd.
9th Floor
Coral Gables, Florida 33134
Telephone:    (305) 372-1800
Facsimile:    (305) 372-3508

*Counsel for the Plaintiffs and the
Putative Class*