**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:                                                                      Case No. 8-24-bk-00676-RCT

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,                                  Chapter 11

      Debtor.
_____

Michael Goldberg, *on behalf of* Javier                  Adversary Pro. No. 8-25-ap-00347-RCT
Perales; Michael Passino *on behalf of*
Allison Passino; and John Griffith *on behalf of*
Jackson Griffith, individually and on behalf of
all others similarly situated,

      Plaintiffs,                                                                CLASS ACTION

v.

AMERICAN MOMENTUM BANK,

      Defendant.
_____/

**DEFENDANT AMERICAN MOMENTUM BANK'S RESPONSE**
**TO MOTION FOR LEAVE TO TAKE A LIMITED RULE 30(B)(6) DEPOSITION**
**ON CLASS CERTIFICATION**

Defendant American Momentum Bank ("AMB") files this Response to Plaintiffs' Motion

for Leave to Take a Limited Rule 30(b)(6) Deposition on Class Certification (Dkt. No. 81) and

would respectfully show the Court as follows:

**INTRODUCTION**

AMB has cooperated and will continue to cooperate with the development of this case

through reasonable discovery aimed at learning the truth about Plaintiffs' allegations in this case

and the allegations in the Trustee's separate case.  Nothing about what actually happened is

"devastating" to AMB.  AMB has not stopped cooperating.  And the sky is not falling.

1

In fact, there is not actually anything for the Court to decide at this time.  Plaintiffs are free to proceed with whatever depositions they would like, including a 30(b)(6) deposition of AMB.  Leave is *not* required.  In fact, Plaintiffs have been free to conduct depositions since January 16, 2026 and have elected not to do so – almost certainly because depositions will be more productive once documentary discovery is well under way.  Thus, Plaintiffs do not actually want leave to proceed with the deposition that is the subject of their Motion.  Rather, Plaintiffs want an improper advisory opinion granting them leave to proceed with a *second* deposition covering undefined topics at some point in the future.  Stated differently, Plaintiffs do not want to be inconvenienced with Rule 30's pesky limits or the analysis conducted under Rule 26(b)(1) and (2).

Whether to grant leave to conduct a second deposition depends on whether the deposition is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" and whether "the party seeking discovery has had ample opportunity to obtain information by discovery in the action."  Fed. R. Civ. P. 26(b)(2)(C)(i) and (ii).  In practice, this boils down to a simple question: could the party have noticed topics at the earlier deposition that it wants to cover at the second deposition?  *See, e.g., Harvard v. Dixon*, No. 4:19-CV-212-AW-MAF, 2022 WL 23042769, at *2 (N.D. Fla. July 12, 2022) (denying leave for additional deposition where "Plaintiffs do not provide any good reason why the 30(b)(6) topics they want now were not noticed" in earlier 30(b)(6) deposition).

Plaintiffs know how that question will be answered, so they have repackaged their request into something different – a motion for leave to take a deposition *they do not need leave to take*.  In reality, Plaintiffs are looking for a Court order authorizing them in advance to engage in serial depositions for strategic advantage and at great cost to AMB.  The cost of preparing for and participating in multiple 30(b)(6) depositions is undeniable.  Another critical issue is the unfair

strategic advantage Plaintiffs seek here. As one District Court poignantly put it, "allowing for serial depositions . . . provides the deposing party with an unfair strategic advantage, offering it multiple bites at the apple, each time with better information than the last." *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 235 (E.D. Pa. 2008).

Very simply, the Court should deny the Motion as moot because there is no issue ripe for adjudication. *See Gagliardi v. TJCV Land Trust*, 889 F.3d 728, 733 (11th Cir. 2018) ("We are not in the business of issuing advisory opinions that . . . merely opine on what the law would be upon a hypothetical state of facts."); *Lanier v. City of Miami*, No. 23-CV-22510, 2023 WL 8527177, at *15 (S.D. Fla. Dec. 8, 2023) (denying defendant's discovery motion because the Court could not rule on the motion "without issuing what would be similar to an impermissible advisory opinion").

If the Motion were procedurally proper, though, it would also fail on the merits. There is no need to indulge Plaintiffs' impulsive request for an early, broad, and burdensome 30(b)(6) deposition at this time. Nor should the Court accept Plaintiffs' mischaracterization of the request as "narrow" or "limited." Plaintiffs seek to depose a corporate representative to testify regarding sixteen years of bank history regarding thirteen categories of policies, procedures, and practices, and AMB's application of those policies, procedures, and practices to more than 120 accounts over the same sixteen-year period. In other words, Plaintiffs want to depose a bank representative (or more likely, *representatives*) about how each of numerous policies, procedures, and practices were applied to hundreds of thousands of transactions in hundreds of different accounts over sixteen years. Then, Plaintiffs want to do it *all over again* with more topics still. There is not actually any problem that a prompt deposition would resolve. Substantial completion of document production is forthcoming, and Plaintiffs will have the opportunity to conduct depositions in the due course of litigation, including a 30(b)(6) deposition on all topics.

**FACTUAL BACKGROUND**

The supposed basis for Plaintiffs requested relief is the development of discovery in this matter, so that may be the place to start. To be clear, AMB has never suggested that its resources were inadequate to "perform more than one litigation task at a time." *See* Mot. at 4. Rather, and quite reasonably, undersigned counsel explained that they could *either* prioritize producing those "high priority" documents identified by Plaintiffs *or* prioritize completing production of the voluminous custodial documents, *i.e.*, emails. In other words, not *everything* can be prioritized at once. That is, after all, the nature of priorities. Since then, Plaintiffs requested that AMB substantially complete its production of documents responsive to its first set of Requests for Production (Exhibit B to the Motion) by the first week of June, and AMB has confirmed it will do so. AMB is diligently working towards that end.

The real impetus for this Motion is that Plaintiffs have been disappointed that AMB's documents have differed from Plaintiffs' expectations. Consider the chief example cited by Plaintiffs, Document AMB_0038402. That document, titled "Audit History" was produced in response to Plaintiffs' request that AMB produce all fraud detection alerts and other related alerts. In fact, the "Audit Histories" do not show fraud alerts. As AMB has explained to Plaintiffs' counsel orally and again in a March 19, 2026 email, "audit reports do not contain alerts – those are found in the work list history." The Client Worklist History corresponding to AMB_0038402 was produced as AMB_0038405, on the same day as the Audit History.[1] The Worklist History shows

---

[1] At this point, the issue of confidentiality must be addressed. The Motion represents the first and only time Plaintiffs have raised any concern with AMB's designation of documents as "confidential". There has been no conferral, and Plaintiffs have not requested that AMB remove "confidential" designations from any document. More importantly, AMB's designation is correct. The Audit History and Client Worklist History produced contain sensitive information relating to the amounts of money flowing into and out of accounts for particular customers, information AMB protects as a matter of course on behalf of its customers. Moreover, these documents combine to reveal the kinds of things monitored and the methods of monitoring performed by AMB pursuant to the Bank Secrecy Act and other related legal and regulatory frameworks. AMB submits that the documents are properly designated as "confidential." Of

any alerts that may have existed (dating back to the beginning of the customer relationship), and the Audit History is a log of actions taken with respect to that particular customer, including, but not limited to, the review of alerts listed in the Worklist History. Among other things, the Audit History identifies when a review was conducted, by whom, and whether suspicious activity was noted.[2] These documents were produced to Plaintiffs on March 6, 2026.

On a March 13, 2026 conferral call, Plaintiffs' counsel explained that, based on experience litigating against other banks in other cases, they expected alerts in other forms, including real-time alerts and monthly reports, *i.e.*, more of a paper trail. In response, undersigned counsel confirmed his understanding, from conversations with client representatives, that the Audit History and Worklist History documents contained the full account of all alerts generated by AMB's automated BSA monitoring system and all supporting information. Beyond this explanation, AMB reminded Plaintiffs' counsel that they would have the opportunity to question witnesses at future depositions – the forum where pertinent documents are typically explained in litigation.

On March 19, 2026, counsel for AMB confirmed *again,* in writing this time, the understanding "that there is no other information available relating to the alerts reflected in the work list histories." This specific statement was in response to what Plaintiffs' counsel "have seen in other cases." What *other banks* did, as gleaned in *other cases*, has no bearing on what systems AMB employs or on AMB's discovery obligations. AMB is obligated to produce documents in its possession, custody, and control, not *create documents* consistent with Plaintiffs' expectations.

On the March 13 call, counsel for AMB also confirmed that procedures pertaining to the BSA alert system had been prioritized and would be produced. And AMB committed to make a

---

course, AMB takes no issue with such documents being reviewed by the Court, whether filed under seal or reviewed in camera. AMB does not believe there is a real dispute here – simply grist for Plaintiffs' mill of alleged grievances.
[2] The Worklist Histories contain much more information relating to account opening and due diligence, but they were prioritized because of information they include regarding alerts that were top of mind for Plaintiffs.

substantial production by March 25, 2026, with a mixture of custodial and high-priority items. Two days before that production, Plaintiffs filed the Motion at issue here. Had Plaintiffs waited two days, they would have been able to review the procedures relating to the Worklist Histories, other BSA-related procedures, and more than 5,000 other documents reflecting more than 100,000 pages of additional production. Plaintiffs could have reviewed produced policies and procedures to confirm what AMB actually did in practice. And more documents are coming as AMB works through and produces additional documents over the next two months.

Simply put, the questions that supposedly gave rise to the request for a preliminary 30(b)(6) deposition have largely been resolved. More is coming. Nevertheless, Plaintiffs push forward with their request because Plaintiffs are not actually trying to get clarity on issues. Plaintiffs want multiple bites at the apple for strategic advantage.

Regardless, when Plaintiffs' counsel remained unsatisfied with AMB's response, Plaintiffs' counsel raised the issue of a "limited, narrow" 30(b)(6) deposition on documents, including policies and procedures. Undersigned counsel indicated a reluctance because of the problematic overlap between the subjects at issue and the substance of the dispute. As a practical matter, it would be impossible to conduct a narrow deposition focused on *these* documents without crossing over into topics that form the heart of the case – after all, Plaintiffs requested information regarding the existence of policies and procedures, but also historical changes to policies and procedures, and the application of policies and procedures to these specific customers. These are not merely inquiries into the existence or production of documents, but substantive topics on the merits of the case and that will be the frequent subject of testimony as discovery progresses.

Nevertheless, and in the spirit of cooperation, counsel for AMB suggested an alternative: Plaintiffs could propound a fulsome 30(b)(6) deposition notice, including the purportedly narrow,

urgent topics as well as the broader list of topics, and AMB would identify the proper representatives for testimony on the various topics.  Plaintiffs could then proceed with the supposedly urgent topics along with any others being handled by the designated representative(s). The remaining topics could be addressed at later date.  The key issue from AMB's perspective was that the topics would be covered *once* as contemplated by the rules.  Plaintiffs rejected this idea, so AMB agreed that it would consider a specific list of topics from Plaintiffs as opposed to the abstract discussions then occurring. The real surprise came when Plaintiffs circulated what was supposed to be a "narrow, limited" list of deposition topics – Exhibit C to the Motion.  That draft deposition notice was 12 pages – surprising for a "narrow, limited" deposition notice.  But the substance of the requests was even more surprising.

Plaintiffs seek the early deposition, without it affecting any future depositions, of a corporate representative to testify regarding AMB's "transaction monitoring" "policies, procedures, practices, and/or compliance programs", explicitly including "written policies and procedures" as well as "patterns and practices of implementing such policies and procedures", "explanations of all internal codes, abbreviations, and means of compiling or recording relevant data under such policies, procedures, and practices", and "changes to these policies, procedures, and practices *from 2009 through 2025*".  Dkt. 81-3 at 7–8.  Plaintiffs also want that witness to testify regarding any "[e]xceptions to any of the programs, policies, and procedures" as well as "[v]iolations or disciplinary actions by employees relating to any of the programs, policies, and procedures" that occurred "from 2009 through 2025", irrespective of whether such exceptions, violations, or disciplinary actions related to any of the parties of interest in this case or even occurred in the same state.  *Id.* at 5, 7.  And Plaintiffs want the witness to testify about AMB's "application of the policies, procedures, practices, monitoring methods and processes" to any

account "held in the name of, for the benefit of, or on behalf of" 147 listed business entities, seven individuals, and *thousands* of beneficiaries.  *Id.*[3]

The Plaintiffs then expect this witness (or witnesses) to recount *sixteen* years of changes to *twelve other* categories of policies, procedures, practices, all exceptions, violations, or disciplinary actions related to those policies, procedures, and practices, and a decade and a half of AMB's application of those policies, procedures, and practices to hundreds of bank accounts.[4]  These requests implicating hundreds of thousands of transactions, dozens of policies and procedures, and more than 120 bank accounts could (without the Rules' protective measures) involve *weeks* of testimony.  And so far, we have only talked about proposed deposition subjects 2 and 7 (and only part of 7).  *See* Dkt. No. 81-3 at 7–9.  Seven more deposition subjects, covering approximately the same 16-year history and hundreds of accounts are also requested.

### ARGUMENT

The simple reality is that preparing a witness or witnesses to testify to the issues set forth in Plaintiffs' request will take *weeks* of preparation.  As AMB has shared with Plaintiffs, policies, procedures, and practices dating back to 2009 are not readily available to AMB because AMB's document retention policy (which has been produced in this matter) provided for the routine destruction of old documents.  Thus, preparation of a witness would involve extensive research,

---

[3] As a practical matter, AMB has identified and produced documents relating to just over 120 bank accounts which arguably constitute "Relevant Accounts" as defined by Plaintiffs.  While the overbreadth of Plaintiffs' requests is facially evident, AMB respectfully refers the Court to its Objections and Responses to Plaintiffs' Request for Production of Documents, attached as Exhibit B to the Motion (Dkt. No. 81-2) for a more fulsome articulation of the impossibility of Plaintiffs' requests.  Specifically, AMB refers the Court to General Objections 4, 5, 6, and 8, as well as the specific objections lodged in response to RFPs 1 and 2 (of 37 requests propounded in that set), as illustrative of the challenges presented by such overbroad requests.  *See* Dkt. No. 81-2 at 3–4, 6–7.

[4] The other policies, procedures, and practices about which Plaintiffs expect a witness to testify relate to (1) the Bank Secrecy Act, (2) the USA Patriot Act, (3) anti-money laundering rules and regulations, (4) fraud and money laundering detection/prevention, (5) customer due diligence and enhanced due diligence, (6) customer risk ratings, (7) wire transfers, (8) inter and intra-bank transfers, (9) overdrafts and insufficient funds, (10) branches and tellers operations, (11) employee manuals and/or employee codes of conduct, and (12) internal audits.  Dkt. No. 81-3 at 7.

8

both by counsel and by the representatives designated to testify.  In a recent conferral, Plaintiffs' counsel asked, hypothetically speaking, when witnesses *could* be presented if this Motion is granted.  Counsel for AMB indicated that, at the earliest, it would be mid-May.  That represents a genuine and reasonable assessment of the work it will take to prepare witnesses on the topics identified by Plaintiffs – all while AMB is in the throes of substantially completing document production.  This burden is simply not warranted.

Chiefly, the burden is not warranted at this point because it is wholly unnecessary.  But the real problem is not the burden of preparing a 30(b)(6) witness – it is a veritable certainty that AMB will be the subject of a 30(b)(6) deposition in this case.  The issue is that Plaintiffs seek to visit this burden on AMB *twice*, incredibly claiming this would *minimize* the burden on AMB.  *See* Mot. at 3.  This does not pass the smell test.

More importantly, this is *exactly* what the Rules preclude.  Rule 30 expressly prohibits a party from conducting a deposition without leave of court, in the absence of a stipulation, if "***the deponent*** has already been deposed in the case." Fed. R. Civ. P. 30(a)(2)(A)(ii) (emphasis added).  Courts uniformly hold that this constraint is applicable in the 30(b)(6) context. *See, e.g., Bridgefield Cas. Ins. Corp. v. Cincinnati Ins. Co.*, No. 8:23-CV-2465-CEH-LSG, 2025 WL 1148683, at *2 (M.D. Fla. Apr. 18, 2025) (slip op.) ("The rule requiring leave of court to take a second deposition applies to an entity that is deposed pursuant to Rule 30(b)(6)." (quoting 7 Moore's Federal Practice - Civil § 30.05(1)(c) (3d ed.)) (internal quotation marks omitted)); *Harvard*, 2022 WL 23042769, at *1 (holding that Plaintiffs needed leave to depose Florida Department of Corrections again); *Porto Venezia Condo. Ass'n, Inc. v. WB Fort Lauderdale, LLC*, No. 11-60665-CIV, 2012 WL 2339703, at *3 (S.D. Fla. June 14, 2012) (holding that notice of

second deposition of corporate representative was invalid because leave of court had not been granted).[5]

While leave of Court is required for a *second* 30(b)(6) deposition, it is wholly unnecessary here because a *first* deposition has not yet occurred. Thus, Plaintiffs are not actually seeking leave for their first deposition but asking the Court to determine *now* that their second deposition (with undefined topics) can proceed. This is an improper request for an advisory opinion. *See Gagliardi*, 889 F.3d at 733 ("We are not in the business of issuing advisory opinions that . . . merely opine on what the law would be upon a hypothetical state of facts."); *Lanier*, 2023 WL 8527177, at *15 (denying discovery motion that requested an "impermissible advisory opinion").

Plaintiffs plainly believe that they would be unable to establish cause for a second 30(b)(6) deposition if they proceeded with the deposition they are asking this Court to authorize. Instead, they are requesting to impose this considerable burden on AMB with impunity, and for the purpose of securing an improper strategic advantage. The Court should deny Plaintiffs' Motion.

---

[5] Rather than acknowledging the litany of authority requiring leave for multiple 30(b)(6) depositions, Plaintiffs question whether leave is even required, citing *Building Materials Corp. of Am. v. Henkel Corp.*, No. 6:15-CV-548-ORL-22GJK, 2016 WL 11164043 (M.D. Fla. Apr. 29, 2016), *Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2015 WL 2090401, at *3 (S.D. Fla. May 5, 2015), and *Quality Aero Tech, Inc. v. Telemeterie Elektronik GmbH*, 212 F.R.D. 313 (E.D.N.C. 2002). *See* Mot. at 3, 5 n.5. Notably, *Building Materials Corp.* and *Procaps* both cite to *Quality Aero* and only *Quality Aero* as an example of a Court holding that "leave of Court [is] not required before taking multiple Rule 30(b)(6) corporate representative depositions." *See Bldg. Materials Corp.*, 2016 WL 11164043, at *1; *see also Procaps*, 2015 WL 2090401, at *3 n.2. As a sister court of the *Quality Aero* court has recognized, "when *Quality Aero* was written [in 2002], Rule 30 only restricted a party's ability to take a second deposition if 'the *person* to be examined already has been deposed in the case.'" *Infernal Tech., LLC v. Epic Games, Inc.*, 339 F.R.D. 226, 230 n.4 (E.D.N.C. 2021). Thus, "[t]he current language of Rule 30 . . . conflicts with *Quality Aero*'s holding about the number of times an organization can be deposed under Rule 30(b)(6)." *Id.* Courts across the country recognize that leave is required. *See, e.g., Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001) ("Because this second Rule 30(b)(6) subpoena was issued . . . without leave of court, it was invalid."); *City of Las Cruces v. United States*, Civ. No. 17-809 JCH/GBW, 2021 WL 330062, at *7 (D.N.M. Feb. 1, 2021) (finding "the analysis underpinning the minority rule"—*Quality Aero*—"unconvincing," and adopting the majority rule); *Duran v. Sara Lee Corp.*, No. 1:11-CV-313, 2013 WL 12308200, at *1 (W.D. Mich. May 3, 2013) ("[There is] no doubt in the court's mind that *Quality Aero* was wrongly decided."). *Many* more cases could be cited for this uncontroversial conclusion.

Respectfully submitted on April 13, 2026.

By:  /s/ Marcos Rosales
Marcos Rosales
TX Bar No. 24074979
(Admitted *Pro Hac Vice*)
mrosales@beckredden.com
Eric B. Williams II
TX Bar No. 24131767
(Admitted *Pro Hac Vice*)
ewilliams@beckredden.com
**BECK REDDEN LLP**
1221 McKinney, Suite 4500
Houston, TX  77010-2010
Telephone:  (713) 951-3700

Donald R. Kirk
FL Bar No. 105767
dkirk@carltonfields.com
Ryan Yant
FL Bar No. 104849
ryant@carltonfields.com
**CARLTON FIELDS, PA**
4221 W Boy Scout Boulevard, Suite 1000
Tampa, FL 33607
Telephone: (813) 229-4334
Facsimile:  (813) 229-4133

*Counsel for Defendant American
Momentum Bank*

### CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2026, I electronically filed a true and correct copy of the

foregoing with the United States Bankruptcy Court for the Middle District of Florida using the

Court's CM/ECF system, thereby serving all registered users in this case.

/s/ *Marcos Rosales*
Marcos Rosales

11