**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| In re: | Case No. 8-24-bk-00676-RCT |
| THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., | Chapter 11 |
| Debtor. | |

Michael Goldberg, *on behalf of* Javier Perales; Michael Passino *on behalf of* Allison Passino; and John Griffith *on behalf of* Jackson Griffith, individually and on behalf of all others similarly situated,

Ad. Pro. No. 8:25-ap-00347-RCT

Plaintiffs,

v.

AMERICAN MOMENTUM BANK,

Defendant.

_____/

Michael Goldberg, *as Chapter 11 Trustee*,

Ad. Pro. No. 8-26-ap-00015-RCT

Plaintiff,

v.

AMERICAN MOMENTUM BANK,

Defendant.

_____/

### PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

The Plaintiffs, Michael Goldberg, in his capacity as Chapter 11 Trustee ("**Trustee**") of the bankruptcy estate of The Center for Special Needs Trust Administration, Inc.; and Michael Goldberg on behalf of Javier Perales; Michael Passino on behalf of Allison Passino; and John Griffith on behalf of Jackson Griffith, individually and on behalf of all others similarly situated ("**Class Plaintiffs**" and together with Trustee "**Plaintiffs**") jointly move the Court for entry of an order compelling production of documents in the two cases (25-ap-00347-RCT, and 26-ap-00015-RCT) (each a "**Case**" and together the "**Cases**") against American Momentum Bank ("**AMB**" or the "**Bank**") (collectively with Plaintiffs "**Parties**") and state in support thereof:

### LOCAL RULE 7026-1(D) CERTIFICATION

The Parties have conferred on the matter raised in this Motion, including through several Zoom video conferences, and the Bank does not agree to the relief sought. The Parties have agreed that the Plaintiffs should file this Motion while conversations continue so that the Court may resolve the dispute at the June 23, 2026, status conference in the absence of an agreement.

### INTRODUCTION

These cases involve claims against the Bank for, among other things, knowingly assisting in a scheme causing the loss of $100,000,000 from the estate's beneficiaries of life-sustaining special needs trusts. The Plaintiffs have been steadily pursuing discovery since December 5, 2025. *See* **Exhibit A** First RFP; **Exhibit B**, the Bank's First Responses and Objections; **Exhibit C** Second RFP; **Exhibit D**, the Bank's Second Responses and Objections.

Six months after the Class Plaintiffs served the First RFP, the Bank now states that it has substantially completed production as of June 5, 2026. Despite the Bank's position on substantial completion, it has refused to produce certain categories of documents that are essential for the Plaintiffs' Cases. The discovery cutoff in both Cases is January 29, 2027. The Plaintiffs are fully

prepared, in this seven-month window, to review all of the documents, conduct follow-up discovery, and take all of the necessary depositions. In light of the Plaintiffs' desire to begin fact witness depositions imminently, the Plaintiffs now seek this Court's guidance on the documents the Bank has refused to produce.

The Plaintiffs seek to compel production of personnel files for three Bank employees (Sherry Lilly, Karen Jones, and Sandy Green)[1] who are named in the Complaints[2] and identified in the Bank's initial disclosures, are agreed-upon custodians for whom the Bank says it has substantially completed production, and whom the Plaintiffs have identified from the outset as being first-wave deponents. Personnel files are regularly compelled in circumstances like this— where the files are relevant, proportional, impose little to no burden on the producing party, and will be kept pursuant to a confidentiality agreement. *See, e.g.*, *Wiggins v. Gov't Emps. Ins. Co.*, 2017 WL 3720952, at \*3 (M.D. Fla. July 10, 2017) (compelling production of personnel files and noting, "[i]t is well established that courts must employ a liberal discovery standard in keeping with the spirit and purpose of the discovery rule" (cleaned up)); *Benfatto v. Wachovia Bank, N.A.*, 2008 WL 4938418, at \*5 (S.D. Fla. Nov. 19, 2008). This Court should compel the same production.

The Plaintiffs also seek an order compelling production of the non-custodial SBA/PPP loan underwriting files that the Bank refuses to produce.[3] The Bank assisted the Center and other Govoni-related entities obtain PPP and SBA loans during relevant years in the banking

---

[1] Reserving rights to seek other relevant personnel files as the need arises.

[2] See 25-AP-00347-RCT, Doc. 1 ("**Class Complaint**") and 26-ap-00015-RCT, Doc. 1 ("**Trustee Complaint**").

[3] The Plaintiffs understand that Bank employee Steven Hoschak was a primary point of contact for communications with the Center and Govoni-related entities with respect to SBA/PPP loans. The Plaintiffs have requested inclusion of Mr. Hoschak as a custodian, and the Bank has disagreed. In its latest production volume dated June 5, 2026, the Bank produced 15 documents for which Mr. Hoschak is named as custodian in the metadata load file, and for which the metadata file path traces to Mr. Hoschak's "U Drive" in the Bank's computer system. This inclusion prompted the Plaintiffs to ask the Bank if it had reconsidered its position on including Mr. Hoschak as a custodian. The Bank disagreed that any of his custodial documents had been produced and maintained its opposition to agreeing to Mr. Hoschak as a custodian. The Plaintiffs are continuing to attempt to resolve the custodial file for Mr. Hoschak.

relationship. The requested non-custodial SBA/PPP loan underwriting files should reveal the Bank's knowledge of financial information and the purpose of the relevant Debtor- and Govoni-related entities, including but not limited to anti-money laundering (AML) and Know Your Customer (KYC) information, and whether the Bank had concerns regarding assisting with these lending efforts yet nevertheless continued providing banking services. Given the timing of Covid-related PPP Loans (2020–2021[4]), documents relating to underwriting—and the information contained in those documents—would have been in the Bank's possession for several years before the Debtor filed bankruptcy, bearing on the Bank's culpable knowledge at a relevant time. AMB also assisted the Debtor, Boston Finance Group, LLC ("**BFG**"), and many other Govoni-related entities with SBA Loans in 2020 (and perhaps other years). Plaintiffs are entitled to the Bank's discovery related to any relevant entity's application for third-party loans (and the Bank's assistance therein) between 2009 and 2024. Despite the Plaintiffs' repeated explanation of this view, the Bank objects to relevance. These issues are central to the Complaints, and the Court should compel production.

## **ARGUMENT**

The Federal Rules of Civil Procedure allow a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The proponent of the discovery bears the initial burden of proving that the information sought is relevant. *See Kelley v. Allegiant Air, LLC*, 2024 WL 665099, at *3 (M.D. Fla. Feb. 16, 2024). Then, the party resisting discovery must establish the lack of relevancy or undue burden in providing the requested documents or information. *Ibid*.

---

[4] *See* Congressional Research Service, SBA Paycheck Protection Program (PPP) Loan Forgiveness: In Brief at 2, https://www.congress.gov/crs-product/R46397 ("Lending began on April 3, 2020[.]"); U.S. Small Business Admin., First Draw PPP Loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/first-draw-ppp-loan ("PPP ended May 31, 2021.").

### I. The Court Should Compel the Production of the Personnel Files of Lilly, Jones, and Green.

Courts routinely compel production of the contents of personnel files. *See Wiggins*, 2017 WL 3720952, at *3 (compelling production of "documents contained in the personnel files regarding job performance, compensation, evaluation, discipline, training, educational background, work duties and hours of work" where the employees "had more than incidental or minimum contact" with the plaintiff's insurance claim); *Benfatto*, 2008 WL 4938418, at *5 (Documents relating to "'incentives, bonuses, quotas, quality control reports, documents related to or concerning job description, salary structure, reimbursements, evaluations, complaints, training, and length of employment,' are relevant and discoverable" where the claims alleged turn on employees' knowledge and conduct.). Despite this, the Bank refuses to produce the personnel files of these three key employees. This Court should reach the same conclusion as its sister courts and compel production.

The Plaintiffs issued the following requests:

22.     Your personnel file for Sherry Lilly.
23.     Your personnel file for Karen Jones.
24.     Your personnel file for Sandy Green.

*See* First RFP Nos. 22, 23, 24.[5] The Bank objected uniformly to these three requests as follows:

> AMB objects to this request as overly broad, harassing, and not proportional to the needs of the case in that it seeks documents and communications that are wholly irrelevant to the subject matter of the lawsuit. AMB further objects that this request invades the privacy rights of Sherry Lilly [or Karen Jones, or Sandy Green]. AMB further objects to this request as overly broad in that it purports to cover a sixteen-year time period, despite the fact that the transactions Plaintiffs claim should have been stopped occurred between 2011 and 2015.

---

[5] The Plaintiffs recognize an error in their numbering of the Requests. From here on out, this Motion will use the correct numbers reflected in the Bank's Responses and Objections.

*See* Responses and Objections Nos. 24, 25, 26. The Parties have met and conferred on the personnel files several times. In these conferrals, the Plaintiffs have made clear that they do not seek irrelevant private information relating to employees' health conditions, insurance benefits, Family Medical Leave Act materials, or documentation of inconsequential matters like tardiness or absence. Instead, the Plaintiffs seek only that which is relevant and supported by the law: documents relating to training, compensation, bonuses, performance evaluations, misconduct incidents, and termination or severance. Despite the Plaintiffs' tailoring, the Bank stands on its unsupportable objections.[6]

None of the Bank's objections persuade. First, the Bank claims the Requests are "not proportional to the needs of the case in that [they] seek[ ] documents and communications that are wholly irrelevant[.]" Responses and Objections Nos. 24, 25, 26. Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or many be in the case." *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) (cleaned up). And proportionality requires "counsel and the court to consider . . . the needs of the case," starting with "the actual claims and defenses[.]" *Tiger v. Dynamic Sports Nutrition, LLC,* 2016 WL 1408098, at *2 (M.D. Fla. Apr. 11, 2016) (cleaned up).

The three personnel files at issue belong to Bank employees whose names are all over the documents already in hand—and the Complaints. Lilly, Jones, and Green communicated regularly

---

[6] The Plaintiffs also requested "[e]mployee records of employees who had any involvement with the Center, Govoni, Gregory, Belisle, Staunton, Witeck, Janicki, LJ, or any Govoni Business Entity. *See* First RFP No. 13. The Bank objected on similar grounds. *See* Responses and Objections No. 13. This Motion is directed only at the three specific personnel file requests. But the Plaintiffs will be seeking production of all other responsive documents under Request No. 13, at least as to all employees that the Bank identified in its Initial Disclosures, so the Court's guidance on this topic will extend far beyond the three personnel files at issue here. The Parties have conferred on this matter, and the Bank (while facially maintaining its objections) has conceded that RFP 13 is reasonable and stated that it will not maintain objections to RFP 13 that the Court resolves with respect to this Motion. The Plaintiffs will seek, consistent with the Court's ruling on this Motion, the personnel files for any employees who handled the Center or Govoni accounts and whom the Plaintiffs intend to depose.

5

with the Center and with Govoni's other employees, had a wealth of knowledge relating to the Center and to Govoni's other businesses, and executed many of the transactions at issue here. *See* Class Complaint ¶¶ 46, 173, 196, 236–46, 260–61, 266, 269, 282–84, 288–93, 295–300, 309 (Lilly); *id.* ¶¶ 266, 295–300, 304–06 (Jones); *id.* ¶¶ 266, 275–79, 285–86, 308–11 (Green); Trustee Complaint ¶¶ 11–12, 120–21, 124, 130–35, 138, 143, 146–48, 198–200, 204, 210.  Their files—anticipated to include performance evaluations, compensation structures, bonus or incentive information, disciplinary write-ups, work duties, and training histories—bear directly on the Bank's "actual knowledge" and "substantial assistance," as well as its financial motives for supporting Govoni's scheme. In other words, the personnel files "bear[ ] on, or . . . reasonably could lead to other matter that could bear on," issues central to the case—they are relevant. *See Akridge*, 1 F.4th at 1276 (cleaned up).

The Bank has pushed back with particular force on the Plaintiffs' request for complete compensation records, seemingly taking issue with the relevance of base salary (as opposed to incentive bonuses). But "all compensation and bonus information for the subject employees . . . is necessary to provide a complete picture regarding the subject employees' incentives, motivation, and/or bias." *See In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, MDL No. 2385, 3:12-md-02385 (S.D. Ill. Apr. 26, 2013), ECF No. 166 at 5; *see also In re Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545, No. 14-cv-1748 (N.D. Ill. Oct. 15, 2015), ECF No. 1027 (granting plaintiffs' motion to compel production of "salary and other compensation information").

Second, the Bank's insistence that the Requests are overly broad is based solely on its misreading of the Complaints. The Bank claims the time frame is too long because "the transactions Plaintiffs claim should have been stopped occurred between 2011 and 2015."

6

Responses and Objections No. 24, 25, 26. This is plainly wrong. The Complaints expressly allege an ongoing breach of fiduciary duty, manifest in part through transactions that occurred between 2009 and *at least* 2020, with relevant conduct (and resulting damages) continuing even later. *See, e.g.*, Class Complaint ¶¶ 18, 114, 152, 177–79, 212–15, 220; Trustee Complaint ¶¶ 103, 152, 240. The Bank is not entitled to rewrite the operative pleadings and use its misinterpretation to unilaterally define the scope of discovery.

Third, the Bank's "privacy" objection falls flat. The Plaintiffs have clarified they do not need—and in any event would treat with the highest confidentiality—private information relating to employees' health conditions and the like. But from a procedural perspective, the Bank offers no specificity or support for the objection, effectuating a waiver. *See Zurich Am. Ins. Co. v. Hardin,* 2019 WL 3082608, at *4 (M.D. Fla. July 15, 2019); *Spencer v. City of Orlando, Florida*, 2016 WL 397935, at *2 (M.D. Fla. Feb. 2, 2016). What's more, as courts in this district have repeatedly recognized, there is not "any statute, rule or case authority for the proposition that documents are not discoverable simply because they contain confidential or sensitive information." *Lesniak v. Geico Gen. Ins. Co.*, 2020 WL 5877892, at *5 (M.D. Fla. May 7, 2020) (cleaned up); *see also Moss v. GEICO Indem. Co.*, 2012 WL 682450, at *3 (M.D. Fla. Mar. 2, 2012) (same). Even if the Court examines further, the objection is meritless. Nearly all of the discovery in this case is bound to be "private." The entire case is about intimate financial affairs of permanently disabled individuals, surviving on trusts established because of their disabling conditions. Recognizing this reality, the Parties agreed in principle to a comprehensive confidentiality order and have been making reciprocal productions pursuant to it, pending submission to the Court for formal entry. This is all the protection required for "private" information. *See Benfatto*, 2008 WL 4938418, at *6 (directing that personnel files should be "treated with discretion" and "not shared with or

divulged to [anyone] for any reason outside this litigation"); *Knox-Thompson v. Truist Bank*, 2020 WL 10354010, at *2 (M.D. Fla. Nov. 3, 2020) (compelling production of "confidential, personal, and sensitive employee information" because "the information is protected by the parties' confidentiality agreement").[7]

In the Parties' most recent meet and confer, the Bank took the position that the Plaintiffs can simply ask deposition questions about the personnel-file topics. This approach is inadequate and unsupported by law. The Plaintiffs are entitled to craft their own discovery strategy and seek the most reliable forms of information rather than relying on subjective memories—and it makes little sense to suggest that fact witnesses will testify to their own biases and motivations. *See In re Trasylol Prod. Liab. Litig.*, 2009 WL 936597, at *2 (S.D. Fla. Apr. 7, 2009) (requiring production of performance reviews and compensation documents because "it is clear that simply making a deponent available will not necessarily reveal information that might be established by producing written documentation."); *Auto-Owners Ins. Co. v. Am. Yachts, Ltd.*, 2006 WL 8435483, at *4 (S.D. Fla. Aug. 3, 2006) (characterizing personnel files as evidence that "will be inherently reliable and will contain information that is not available elsewhere"); *Matter of Hawaii Corp.*, 88 F.R.D. 518, 525 (D. Haw. 1980) (personnel files have "an inherent reliability which cannot now be duplicated by any other source of evidence"). The Court should compel production of the personnel files.

## II. The Court Should Compel Production of the Loan Underwriting Files.

The Plaintiffs requested the loan underwriting files because those materials are directly relevant to a central issue in the Complaints: the Bank's knowing facilitation of the scheme causing

---

[7] Finally, as to the "harassing" objection, the Bank proffers no basis whatsoever. Accordingly, the objection is considered waived. *See Zurich*, 2019 WL 3082608, at *4; *Spencer*, 2016 WL 397935, at *2.

the loss of $100,000,000 from the estate's beneficiaries. The Bank objects based on proportionality and relevance.[8] *See* Responses and Objections No. 3. Neither persuades.

The Plaintiffs' request is straightforward. It seeks:

All Documents and Communications relating to any PPP Loans sought by or on behalf of any of the Govoni Business Entities, including but not limited to:

a. PPP Loan applications, including any attachments, exhibits, or supporting documentation;

b. PPP Loans received, funded, or disbursed, including but not limited to loan agreements, promissory notes, disbursement records, and funding confirmations;

c. Your review, underwriting, evaluation, or approval of any PPP Loan application;

d. Account statements, transaction records, and banking records reflecting disbursement of PPP Loan proceeds;

e. Documents relating to or concerning the use of PPP Loan proceeds;

f. Communications between You and any of the Govoni Business Entities relating to or concerning any PPP Loan application or PPP Loan; and

g. Internal Documents and Communications relating to or concerning any PPP Loan application or PPP Loans.

*See* Second RFP No. 3. This request is neither disproportionate nor irrelevant. The allegations in the Complaints state that the Bank knowingly facilitated the misuse of beneficiaries' funds and actual knowledge is an element of aiding and abetting liability under Count I of the Class Complaint and Count I of the Trustee's Complaint. The purpose of discovery is, therefore, to explore evidence of the Bank's knowledge.

The Plaintiffs already have emails that demonstrate Bank employee Mr. Hoschak was interacting with the Center and other Govoni-related entities, assisting with their loan applications. Accordingly, the requested loan underwriting files should bear on the Bank's knowledge of

---

[8] Mr. Hoschak, the Bank employee who served as a primary point of contact with respect to SBA/PPP loans, is among the additional employees/deponents whose personnel files the Plaintiffs will seek under RFP 13, dependent on the Court's guidance in resolving this Motion.

financial information regarding the Center and BFG, for example; perhaps the Bank's knowledge of the Loan that sits at the crux of both cases; and other relevant financial information, including but not limited to AML and KYC material. This discovery is anticipated to reveal whether the Bank had knowledge and concerns regarding the finances and transactions of the Center and the Govoni-related entities, yet nevertheless continued providing banking services to these companies which perpetuated beneficiaries' losses.

The Bank claims the loan underwriting files are disproportionate to the needs of the case. Not so. This is a discrete "hard-pull" request for a specific set of documents likely to reside in a designated folder—the type of request that courts in this Circuit regularly uphold. *See, e.g.*, *Hallmark Ins. Co. v. Fannin*, 2018 WL 8929810, at *2 (N.D. Ga. July 16, 2018) (compelling production of an entire insurance claim file where the objecting party "indicated no burden or expense associated with producing the claim file – which is presumably maintained as a single, comprehensive file"); *Sandalwood Ests. Homeowner's Ass'n, Inc. v. Empire Indem. Ins. Co.*, 2010 WL 11505988, at *1 (S.D. Fla. Oct. 20, 2010) ("As to the 38 claim files sought by Request 3, the Court finds that their production is not overly burdensome."). Moreover, "[p]roportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC*, 605 B.R. 617, 629 (Bankr. S.D.N.Y. 2019) (cleaned up). Because the loan underwriting files are highly relevant to issues central to the Complaints and are likely to bear on the Bank's material knowledge, the request is not disproportionate. The Court should compel production.

WHEREFORE, the Plaintiffs respectfully request that this Court enter an order compelling production of the personnel files for Sherry Lilly, Karen Jones, and Sandy Green, and the loan underwriting files for the Center and the Govoni-related companies.

Respectfully submitted on June 15, 2026.

By: */s/ Tal J. Lifshitz, Esq.*
    Tal J. Lifshitz, Esq.
    Florida Bar No. 99519
    tjl@kttlaw.com
    Benjamin J. Widlanski, Esq.
    Florida Bar No. 1010644
    bwidlanski@kttlaw.com
    Meaghan Goldstein, Esq.
    Florida Bar No. 1024796
    mgoldstein@kttlaw.com
    Yarden (Jordan) Benatar
    Florida Bar No. 1049274
    jbenatar@kttlaw.com
    **KOZYAK TROPIN &**
    **THROCKMORTON LLP**
    2525 Ponce de Leon Blvd.
    9th Floor
    Coral Gables, Florida 33134
    Telephone:   (305) 372-1800
    Facsimile:   (305) 372-3508

*Counsel for the Plaintiffs and the Putative Class*

By: /s/*Megan W. Murray*
    Megan W. Murray
    Florida Bar Number 0093922
    Scott A. Underwood
    Florida Bar Number 730041
    Adam Gilbert
    Florida Bar Number 1011637
    Melissa J. Sydow
    Florida Bar Number 39102
    UNDERWOOD MURRAY, P.A.
    100 N Tampa Street, Suite 2325
    Tampa, Florida 33602
    Tel: (813) 540-8401
    Fax: (813) 4553-5345
    Email: mmurray@underwoodmurray.com
    sunderwood@underwoodmurray.com
    agilbert@underwoodmurray.com
    msydow@underwoodmurray.com

*Special Counsel to the Trustee*

11