**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:                                                    Case No. 8-24-bk-00676-RCT

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,                               Chapter 11

     Debtor.

_____

Michael Goldberg *on behalf of* Javier              Adversary Pro. No. 8:25-ap-00347-RCT
Perales; Michael Passino *on behalf of*
Allison Passino; and John Griffith *on*
*behalf of* Jackson Griffith, individually
and on behalf of all others similarly situated,

     Plaintiffs,

v.

AMERICAN MOMENTUM BANK,

     Defendant.

_____/

### PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Just one month ago, this Court compelled American Momentum Bank to produce personnel files for three employees who engaged extensively with the Center. *See* Order (I) Granting in Part Motion to Compel Production of Documents and (II) Denying Motion to Compel Responses (Doc. 111) at 4. In granting the Plaintiffs' Motion to Compel, this Court necessarily rejected the Bank's arguments that the personnel files are not "clearly relevant," that the Plaintiffs lack a "compelling" need for the discovery, and that the production would violate a constitutional privacy right. *See* Def.'s Response (Doc. 109) at 1–2, 4–6. Now—despite previously agreeing not to reassert overruled objections on this topic—the Bank is refusing to produce personnel files for other key employees who are designated as custodians and who will be deposed.

## LOCAL RULE 7026-1(D) CERTIFICATION

The Parties have conferred in good faith on the matter raised in this Motion, including through several Zoom video conferences, and the Bank does not agree to the relief sought.

## INTRODUCTION

These cases[1] involve claims against the Bank for, among other things, knowingly assisting in a scheme causing the loss of $100,000,000 from the beneficiaries of life-sustaining special needs trusts. The Plaintiffs have been steadily pursuing discovery and have set dates for the first four fact-witness depositions.[2] The Bank, however, is now refusing to produce personnel files for two of those witnesses—custodians and deponents with direct knowledge of the relevant banking relationships—despite this Court's previous order *and* despite having represented that the Bank would not reassert overruled objections. It seems the Bank intends to mount the same fight regarding the personnel files of each custodian to be deposed. This issue should be resolved now as to all custodian-deponents (as the Plaintiffs believed it already was) to prevent the Bank from derailing the orderly conduct of depositions going forward.

The Bank's attitude towards discovery has been erratic—meaningful productions punctuated by protracted delays, productive conversations followed by back-tracking, and now, compliance with an order to compel followed by revival of the very same objections that this Court already rejected. Litigation cannot proceed in this fashion. The Plaintiffs now respectfully seek a second order compelling production of custodians' and deponents' personnel files—based on the same law and similar facts as the motion this Court granted last month.

---

[1] *Michael Goldberg et al. v. American Momentum Bank*, 25-AP-00347-RCT (the "Class Action") and *Michael Goldberg as Chapter 11 Trustee v. American Momentum Bank*, 26-ap-00015-RCT, Doc. 1 ("Trustee Action").
[2] The scheduled deponents are Karen Jones, Sandy Green, Tom Olma, and Gina Galluzzo.

**BACKGROUND**

In December 2025, the Plaintiffs served their First Requests for Production seeking, among other things, personnel files for certain key employees. *See* **Exhibit A**, First RFP. Requests Nos. 22, 23, and 24 requested personnel files for three specific employees[3] whose identities and roles were already known to the Plaintiffs. Then, Request No. 13[4] sought five categories of employee records from "employees who had any involvement with the Center, Govoni, Gregory, Belisle, Staunton, Witeck, Janicki, LJ [Govoni], or any Govoni Business Entity," including:

> a. job descriptions;
>
> b. records of professional licenses, certifications, or examinations;
>
> c. employee handbooks and training materials;
>
> d. performance evaluations or reviews that address work performed in connection with the Relevant Accounts, business relationships with the Center, Govoni, Gregory, Belisle, Staunton, Witeck, Janicki, LJ, or any Govoni Business Entity or Class Plaintiffs, or any matters involving allegations of professional misconduct, violations of law, regulations, or Your policies and procedures relating to suspicious activity identification, monitoring, and reporting; and
>
> e. any termination or severance agreements.

*Id*. Request No. 13. The Bank objected to all four requests uniformly:

> AMB objects to this request as overly broad, unduly burdensome, harassing, and not proportional to the needs of the case in that it seeks documents and communications that are wholly irrelevant to the subject matter of the lawsuit. AMB further objects that this request invades the privacy rights of [Sherry Lilly, Karen Jones, Sandy Green, or AMB employees]. AMB further objects to this request as overly broad in that it purports to cover a sixteen-year time period, despite the fact that the transactions Plaintiffs claim should have been stopped occurred between 2011 and 2015[.]

**Exhibit B**, Responses and Objections Nos. 15, 24–26. As to Request No. 15, the Bank added:

> AMB further objects to this request as overly broad in that it purports to cover a sixteen-year time period, despite the fact that the transactions Plaintiffs claim should have been stopped occurred between 2011 and 2015, and relate to 155

---

[3] Sherry Lilly, Karen Jones, and Sandy Green.

[4] The Plaintiffs recognize an error in their numbering of the Requests. From here on out, this Motion will use the correct numbers reflected in the Bank's Responses and Objections.

3

persons and entities identified in the request, the overwhelming majority of which are *not* mentioned in the Complaint. AMB further objects to this request as vague in that the phrase "any involvement" is undefined. This request represents an egregious and impermissible fishing expedition.

*Id*. No. 15. The parties have conferred on the Requests and the Objections iteratively from January 2026 through the present. The Plaintiffs summarize the relevant efforts as follows:

On a March 13, 2026, Zoom call, the Bank stood on its objections but conceded that it would consider producing portions of personnel files that explicitly mention the Center or the Govoni entities. This call was memorialized in an email on March 16, 2026. *See* **Exhibit C**, March 16, 2026, Email from Tal Lifshitz, at 2. On March 19, 2026, the Bank responded—first lodging its discomfort with the Plaintiffs' practice of documenting conferral calls (the need for which is readily apparent here) and then adding some line-by-line responses. On the personnel files, counsel confirmed he would confer with the client but concluded "it [is] unlikely we will agree to produce these records." **Exhibit D**, March 19, 2026, Email from Marcos Rosales, at 3 (in red interlineation).

On June 4, 2026, the Plaintiffs emailed the Bank in advance of a planned Zoom call:

Second, as you know, we've previously sought (and will again be seeking) to compel certain AMB personnel files. While the parties impassed on that issue months ago, to avoid any ambiguity regarding our request, I wanted to note that we are seeking the personnel files for the agreed upon custodians, as well as Hoschak (disputed custodian) and any additional AMB employees identified in AMB's initial disclosures. If AMB is willing to reconsider its objections on personnel files in any respect, we're happy to confer again on the issue. Otherwise, we understand AMB will stand on its current objections.

**Exhibit E**, June 4, 2026, Email from Meaghan Goldstein, at 1. The Bank responded (erroneously) that "This is not 'avoiding an ambiguity.' This is springing a new request on the bank that, to the best of my recollection, has never been made." **Exhibit F**, June 4, 2026, Email from Marcos Rosales, at 2 (in red interlineation). To be sure, it was not a new request. *See* **Exhibit A**, First RFP.

On June 10, 2026, the Parties met and conferred again. The Bank, still forgetting that the Plaintiffs had requested all relevant personnel files, took the position that the Plaintiffs would need

to serve new RFPs for any personnel files beyond Lilly, Jones, and Green—and, crucially, stated that the Bank would not reassert any objections that this Court overruled otherwise. The Plaintiffs directed the Bank's attention to Request No. 15 and discussed the possibility of narrowing the scope to custodians and deponents, which the Bank acknowledged could be reasonable.

On June 11, 2026, the Plaintiffs memorialized the conversation from the day before, including two key details: *first*, "You represented that should we want the personnel files of more AMB employees, **you would request that we serve additional RFPs, but you would not reassert objections already overruled**"; and *second*, "You represented that RFP 13's scope[5], narrowed to include **only custodians and deponents, would be a far more reasonable request** and that you are willing to work toward a resolution prior to the status conference[.]" **Exhibit G**, June 11, 2026, Email from Tal Lifshitz, at 1–2 (emphases added). The Bank did not respond to this email—and certainly did not object to any perceived inaccuracies.

On June 15, 2026, the Plaintiffs filed a Motion to Compel (Doc. 102) seeking, in part, Lilly, Jones, and Green's personnel files. In the motion, the Plaintiffs highlighted the related request for other employees' personnel files and explained that they would "seek, consistent with the Court's ruling on this Motion, the personnel files for any employees who handled the Center or Govoni accounts and whom the Plaintiffs intend to depose." Mot. (Doc. 102) at 5, n.6. After a hearing, this Court compelled the Bank to produce the three files. *See* Order (Doc. 111). The Plaintiffs requested the production on June 24, June 29, and July 2, and the Bank produced the files on July 10.

In the meantime, the Parties have been conferring on deposition dates for Jones, Green, and two other Bank employees, Thomas Olma and Gina Galluzzo. Nearing agreement on those dates, on July 16, 2026, the Plaintiffs asked the Bank to provide a date certain for production of

---

[5] This refers to the correctly numbered RFP 15, as reflected in the Responses and Objections.

personnel files for Olma and Galluzzo, and Bank Vice President Maureen Gallagher. *See* **Exhibit H**, July 16, 2026, Email from Meaghan Goldstein, at 1. On a Zoom call later that same day, the Bank reversed on its earlier representation that it would not revive objections that were overruled on the first Motion to Compel. Instead, the Bank said that, absent a court order, it will not produce any employee records beyond training documents or policy acknowledgements. *See* **Exhibit I**, July 21, 2026, Email from Jordan Benatar, at 2 (memorializing the July 16 Zoom call).

This is the backdrop against which the Plaintiffs are forced to file this duplicative Motion.

## ARGUMENT

Courts routinely compel production of personnel files for employees who "had more than incidental or minimum contact" with the relevant facts. *See, e.g.*, *Wiggins v. Gov't Emps. Ins. Co.*, 2017 WL 3720952, at *3 (M.D. Fla. July 10, 2017). This includes documents relating to "incentives, bonuses, quotas . . . documents related to or concerning job description, salary structure, . . . evaluations, complaints, training, and length of employment," all of which are "relevant and discoverable[.]" *Benfatto v. Wachovia Bank, N.A.*, 2008 WL 4938418, at *4–5 (S.D. Fla. Nov. 19, 2008). This Court already determined as much in granting the Plaintiffs' previous motion. *See* Order (Doc. 111) at 4. It should reach the same conclusion now.

### I.    The Personnel Files Are Relevant and Discoverable.

The Plaintiffs have already offered to narrow their request to reach only the personnel files of custodians who will be deposed. *See* **Exhibit G** at 2 (memorializing a Zoom call between the Parties). The Parties have agreed to all custodians to date—meaning there is no dispute as to their

knowledge of, and involvement in, the banking relationships at issue.[6] The five categories of information the Plaintiffs seek are relevant to the claim at issue:

*First*, job descriptions are necessary to understand the scope of each employee's responsibility with respect to the banking relationship. *See O'Connor v. GEICO Indem. Co.*, 2018 WL 1409750, at *3 (M.D. Fla. Mar. 21, 2018) (compelling production of information "concerning the employees' competence, . . . educational background, work duties, and hours of work").

*Second*, records relating to professional licenses or certifications inform the qualifications of each employee to perform their respective duties. *See ibid.*

*Third*, handbooks and training materials are relevant to the Bank's efforts to properly equip employees to serve their roles and the Bank's metrics for assessing performance. *See Turner v. GEICO Indem. Co.*, 2011 WL 11769047, at *2 (S.D. Fla. Sept. 8, 2011) (compelling production of files relevant to "training," "competence," employer's "knowledge of [employees'] professional abilities or shortcomings," and "standards for evaluating an employee's performance").

*Fourth*, performance evaluations—limited to any that bear on the Center/Govoni relationship or allegations of misconduct—bear on the employees' adherence to governing policies and regulations, including the BSA, KYC, AMLA, and fraud-detection issues relevant to this case. Likewise, performance evaluations will shed light on whether employees had performance goals (or were rewarded or reprimanded with respect to those goals) tethered to business activities like account opening quotas or increasing deposits. *See Lesniak v. Geico Gen. Ins. Co.*, 2020 WL 5877892, at *4 (M.D. Fla. May 7, 2020) ("Plaintiff's request for performance evaluation, . . . [and] other data relating to an employee's performance are relevant to showing whether any of the

---

[6] The custodians to date are Sherry Lilly, Karen Jones, Sandy Green, Maureen Gallagher, Andrea Dutton, John Emanuel, Tom Olma, Heather Waters, Lisa Hanna, Lisa Weber, Gina Galluzzo, William Falzone, Julie Sbrocco, Rhea Bratcher, Nanette Randle, Karen Simpson, and Sam Davis.

referenced employees had trouble managing their caseloads, had poor communication, or suffered from other failures that could support a bad faith claim.").

*Fifth*, termination and severance agreements inform each employee's bias and credibility, which are (indisputably) relevant. *See ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1302 (11th Cir. 2018) ("Indeed, proof of bias will typically be relevant.").

II.    **Each of the Custodians and Deponents Had More Than Incidental Contact With the Relevant Banking Relationship.**

Each of the custodians and deponents "had more than incidental or minimum contact" with the relevant facts. *Wiggins*, 2017 WL 3720952, at *3. The Plaintiffs selected custodians based on the Bank employees' roles in the banking relationship and are setting depositions based on the information revealed in the documents. Accordingly, the Plaintiffs can readily set forth facts to justify each and every one, but provide the following two examples to illustrate:

Maureen Gallagher, Executive Vice President and Chief Administrative Officer, managed the Center/Govoni banking relationship from as early as 2008, when internal Bank documents reflect that she was given performance credit for the Center's deposits. In 2010, she corresponded with the Center about fictive "sub-account statements" that the Center issued with the Bank's name affixed. In 2015, the Bank received two grand jury subpoenas relating to Govoni, and Gallagher played an integral role in the Bank's superficial review of his banking activity. Superiors consulted Gallagher for her view of the relationship, given her interactions and oversight. The same year, she authorized Bank employee Sherry Lilly to lift a wire restriction to permit BFG to make an outgoing transfer that it could not afford, based on incoming funds in a not-yet-cleared check from the Center. *See* Compl. ¶¶ 290–93. After approving the irregular treatment, she instructed Lilly to "maintenance the account back to wire on collected," covering the tracks. *See id.* ¶ 293.

Tom Olma is the Bank's former Vice President of Operations and Bank Security Officer. He participated in and signed off on the Bank's thin investigation of the Govoni relationship after the Bank received the grand jury subpoenas. Olma also oversaw BSA officers' review and resolution of alerts in the Bank's YellowHammer monitoring software relating to activity in the Center accounts and Govoni entities' accounts. In that capacity, Olma either approved or gave critical feedback on the BSA officers' treatment of the alerts, indicating his knowledge of the accounts' activity and the Bank's deliberative processes in monitoring that activity. He also had responsibility for the Bank's assessment of the Center as a "high risk" customer.

The requested personnel files will inform the ways that Gallagher and Olma were prepared to perform their tasks, their relative degrees of success or failure in the Bank's eyes, and their respective biases. The production should be compelled. *See Wiggins*, 2017 WL 3720952, at *3.

### III.   The Bank's Objections—Already Overruled Once—Fail Again Here.

This Court already rejected the Bank's boilerplate objections—overly broad, unduly burdensome, harassing, not proportional, irrelevant, and violative of privacy rights—with respect to Lilly, Green, and Jones. The Bank was wrong last month, and it remains wrong now. Personnel files are "relevant and discoverable" where the claims turn on the employees' knowledge and conduct, *Benfatto*, 2008 WL 4938418, at *5, and the employees "had more than incidental or minimum contact" with the nexus of facts, *Wiggins*, 2017 WL 3720952, at *3. Where a request seeks a "single, comprehensive file," as here, production is not considered to be disproportionate or unduly burdensome. *See Hallmark Ins. Co. v. Fannin*, 2018 WL 8929810, at *2 (N.D. Ga. July 16, 2018). Moreover, "[p]roportionality and relevance are 'conjoined' concepts": because the files are certain to bear on knowledge, substantial assistance, and bias, it is quite unlikely that production of hard-pull files can be considered disproportionate. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 605 B.R. 617, 629 (Bankr. S.D.N.Y. 2019).

As for the Bank's insistence that the Requests are overly broad based on the time period and the number of entities involved, both fall flat. As this Court has already recognized, the Plaintiffs allege that "all transfers of funds from the Center's Bank accounts to non-Center, Govoni-related accounts were breaches of the Center's fiduciary duty to the SNT beneficiaries." *See* Order (Doc. 111) at 6. That is, despite the Bank's persistent efforts to make this a case about a few transfers between 2011 and 2015, that is not what the Plaintiffs have pled. The Bank is not entitled to unilaterally limit the scope of discovery to the facts it would prefer to litigate. And the number of Govoni entities is entirely irrelevant: the personnel files are what they are, regardless of whether Govoni had one account or one hundred. The Plaintiffs seek files for custodians and deponents who worked on Center or Govoni accounts. That list does not change based on which, or how many, of those accounts any employee touched.

As before, the Bank's privacy objection rings hollow. The Court entered the Parties' stipulated protective order to safeguard the information exchanged in discovery. In any event, there is no "statute, rule or case authority for the proposition that documents are not discoverable simply because they contain confidential or sensitive information." *Lesniak*, 2020 WL 5877892, at \*5.

\*    \*    \*

The Plaintiffs seek discrete files that are routinely produced and are highly likely to contain information relevant to the Bank's actual knowledge and substantial assistance, as well as the witnesses' biases and motivations. This Court has already recognized as much in compelling the production of three similar personnel files. Nevertheless, the Bank—which previously agreed not to reassert the already-rejected objections—has forced the Plaintiffs to seek further intervention.

WHEREFORE, the Plaintiffs respectfully request that this Court enter an order compelling production of the five categories of personnel file documents for custodians and deponents.

10

Respectfully submitted on July 28, 2026.

By: */s/ Tal J. Lifshitz, Esq.*
    Tal J. Lifshitz, Esq.
    Florida Bar No. 99519
    tjl@kttlaw.com
    Benjamin J. Widlanski, Esq.
    Florida Bar No. 1010644
    bwidlanski@kttlaw.com
    Meaghan Goldstein, Esq.
    Florida Bar No. 1024796
    mgoldstein@kttlaw.com
    Yarden (Jordan) Benatar
    Florida Bar No. 1049274
    jbenatar@kttlaw.com
    **KOZYAK TROPIN &**
    **THROCKMORTON LLP**
    2525 Ponce de Leon Blvd.
    9th Floor
    Coral Gables, Florida 33134
    Telephone:   (305) 372-1800
    Facsimile:   (305) 372-3508

*Counsel for the Plaintiffs and the Putative Class*

By: /s/*Megan W. Murray*
    Megan W. Murray
    Florida Bar Number 0093922
    Scott A. Underwood
    Florida Bar Number 730041
    Adam Gilbert
    Florida Bar Number 1011637
    Melissa J. Sydow
    Florida Bar Number 39102
    UNDERWOOD MURRAY, P.A.
    100 N Tampa Street, Suite 2325
    Tampa, Florida 33602
    Tel: (813) 540-8401
    Fax: (813) 4553-5345
    Email: mmurray@underwoodmurray.com
    sunderwood@underwoodmurray.com
    agilbert@underwoodmurray.com
    msydow@underwoodmurray.com

*Special Counsel to the Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing, that was filed with the Clerk of Court, has been furnished electronically to those parties registered to receive service via CM/ECF on July 28, 2026.

    */s/ Tal J. Lifshitz*
    Tal J. Lifshitz, Esq.
    Florida Bar No. 99519