**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re: Case No. 8-24-bk-00676-RCT

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC., Chapter 11

Debtor.
_______________________________

Michael Goldberg *on behalf of* Javier Perales; Michael Passino *on behalf of* Allison Passino; and John Griffith *on behalf of* Jackson Griffith, individually and on behalf of all others similarly situated, Adversary Pro. No. 8-25-ap-00347-RCT

Plaintiffs, CLASS ACTION

v.

AMERICAN MOMENTUM BANK,

Defendant.
_______________________________/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR EXTENSION OF TIME**

The Defendant, American Momentum Bank, has asked this Court for "a fair chance" to take discovery before responding to the Plaintiffs' Motion for Class Certification. *See* Expedited Motion for Extension of Time (Doc. 139) at 1. The Bank has had that "fair chance" for the last ten months, and it has made little effort. Now, after having squandered the better part of a year without meaningful offensive discovery efforts, the Bank asks this Court to grant it a *four-and-a-half-month* extension of time to respond to the Plaintiffs' Motion. Notably, in the six weeks since the Bank filed its Motion, it has still failed to request so much as a single fact-witness deposition. The

impending close of discovery comes as no surprise. Nor did the timing of the Plaintiffs' Motion—which the Bank had known for months would be filed early.

The Bank has not demonstrated the good cause and due diligence necessary to justify such a modification to this Court's Scheduling Order. The Motion should be denied.

**BACKGROUND**

As the Bank acknowledges, the Parties filed a Joint Uniform Case Management Report nine months ago, in which they mutually proposed that the Defendant's response in opposition to the class certification motion would be due 60 days after the motion. *See* Joint Uniform Case Management Report (Doc. 56); Mot. at 2. This Court adopted the Parties' proposals and memorialized them in the Second Case Management Order. (Doc. 76). The Plaintiffs were not ordered to file on a specified date certain, nor was the Defendant's response set on a fixed date. Rather, the Court imposed a date before which the Plaintiffs must file the class certification motion—by March 5, 2027—and provided that the Defendant would have "60 days after the filing" to submit its opposition.[1] *See* Second CMO at 2.

In the meantime, discovery has been ongoing since December 5, 2025, and closes on January 29, 2027. To date, the Plaintiffs have engaged in extensive paper discovery, taken five depositions, and noticed 13 other fact-witness depositions—all with an eye towards conducting fulsome discovery within the time limits established in the operative scheduling order. All of the depositions have been scheduled through meaningful conferrals, taking into account all Parties' and counsels' schedules, conflicts, and travel needs. The Bank, for its part, has conducted paper

[1] The Bank describes the Scheduling Order as "(at least implicitly) contemplat[ing]" that the response would only be due after the burdens of discovery ended. Mot. at 3. That parenthetical is doing a lot of work to overcome what the Scheduling Order says explicitly: that the response is due 60 days after the motion, and no later than March 5, 2027.

discovery and set depositions for the Plaintiffs' two class certification experts. The Bank has not yet requested availability for a single fact-witness deposition.

The Plaintiffs—after making their intention to file known—moved to certify their class on August 11, 2026. *See* Motion for Class Certification (Doc. 131). Two weeks later, the Bank filed its Expedited Motion to Extend Deadline to File Response (Doc. 139). After filing the Motion, the Bank requested deposition dates for Soneet Kapila and Catherine Ghiglieri, the experts who submitted declarations in support of class certification. The Parties agreed to dates for the expert depositions, and the Plaintiffs readily agreed to extend the Bank's response time to 30 days after the later deposition—setting the deadline for November 19, 2026. *See* Unopposed Motion to Extend Deadline (Doc. 142); Order Granting Unopposed Motion to Extend Deadline (Doc. 144).

In the six weeks that have passed since the Bank told this Court it needs "a fair chance to complete discovery," the Bank has done nothing to advance that cause. Mot. at 3. It has not noticed a class representative deposition. It has not subpoenaed a former Center employee. It has not asked for a phone call to discuss scheduling. It has done *nothing* to develop the "substantial discovery" it told this Court it needs. *Ibid*.

**LEGAL STANDARD**

A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4) (made applicable by Fed. R. Bankr. P. 7016); *see also In re Gonzalez*, 2023 WL 2344265, at *1 (Bankr. M.D. Fla. Feb. 21, 2023). To establish good cause, "the party seeking the extension must establish that the schedule could not be met despite the party's diligence." *Ashmore v. Sec'y, Dep't of Transp.*, 503 F. App'x 683, 685 (11th Cir. 2013). "But if a party was not diligent, that ends the good cause inquiry." *In re Seven Stars on Hudson Corp.*, 637

B.R. 180, 210 (Bankr. S.D. Fla. 2022), *aff'd sub nom. Seven Stars on the Hudson Corp. v. MDG Powerline Holdings, LLC*, 2022 WL 10046439 (S.D. Fla. Oct. 17, 2022).

**ARGUMENT**

The Bank has not demonstrated good cause to warrant modification of the Scheduling Order. Indeed, the Bank does not even acknowledge that this is the nature of the relief it seeks: the Motion lacks any legal standard—or any supporting law at all. But beyond the formalities, the substance of the Motion does nothing to show the Bank's diligence and, therefore, good cause cannot be found.

**I. The Bank Created Its Own Problem by Failing to Act Diligently in Discovery.**

The Bank protests that the Plaintiffs are "depriv[ing it] of a fair chance to complete discovery" before responding to the Motion for Class Certification. Mot. at 3. This is absurd. Discovery has been open for ten months. The Plaintiffs have timely produced their documents and timely responded to interrogatories. The Class Representatives stand ready to appear for depositions—*but the Bank has not asked*. Likewise, counsel stands ready to facilitate depositions with Center employees or anyone else the Bank might identify—*but the Bank has not asked*. The only two deponents the Bank has requested are Mr. Kapila and Ms. Ghiglieri, and the Plaintiffs immediately provided availability, conferred on scheduling, and arranged appropriate office spaces.

Six additional weeks have now passed since the Bank filed its Motion, in which it insisted that "much discovery remains to be taken" and it needs accommodations to do so. *Ibid*. And still, the Bank has not asked to depose a single fact witness, including the three it identifies in the Motion as "imperative to the development of AMB's defenses[.]" *See id.* at 5. Set aside that three

depositions cannot possibly justify a four-and-a-half-month extension. The Bank has shown no diligent effort—no effort at all—to take even that limited discovery.

Diligence requires the complaining party to show its work: what efforts have been made, what remains to be done, and why. The Bank, here, offers none of this to support its Motion. *See, e.g.*, *Corcho v. Bank of Am., N.A.*, 2026 WL 823932, at *2 (M.D. Fla. Mar. 25, 2026) (denying a motion to reopen discovery where the plaintiff had not "explained with particularity what discovery Plaintiff seeks to conduct during an extended discovery period or, more importantly, why that discovery (including any necessary motion practice) could not have been completed within the existing, expired discovery period"); *Angelucci v. GEICO Ins. Co.*, 2009 WL 10670385, at *2 (M.D. Fla. July 14, 2009) (denying a motion for leave to disclose a late expert witness where "the Court is unclear as to why the need for this type of non-medical expert was not realized sooner. . . . Where a motor vehicle accident is the subject of the dispute, it seems the exercise of due diligence would, at the very least, involve an early investigation into whether an accident reconstruction expert . . . might be necessary"). Likewise, on the record here, the Bank offers no explanation for its failure to take discovery to date and no plan to do so in the near future. This is not diligence and cannot justify the requested delay.

The events surrounding Mr. Kapila's deposition are illustrative of the extent to which the Plaintiffs have bent over backwards to accommodate the Bank's thin discovery efforts.[2] Mr.

[2] The Bank makes much ado about the extent and duration of Mr. Kapila's work in the related Chapter 11 proceedings. *See* Mot. at 4–5. Two things on this. First, the only thing at issue in this case, at this stage, is Mr. Kapila's class certification declaration, which opines in short that he has developed a damages methodology that can be applied to the entire class. That commonality opinion has little to do with the body of substantive work he performed for the Trustee in the Chapter 11. Second, as the Bank acknowledges, Mr. Kapila's Chapter 11 work is well-documented and available for examination from the public record—so, to the extent the Bank desires to comb his fee applications and declarations, it has been free to do so all along.

Kapila's deposition was set for September 30, 2026. On September 21, 2026, Mr. Kapila responded to the Bank's subpoena duces tecum and produced the appropriate universe of documents under Rule 26. More than a week later, and exactly 24 hours before the deposition was to begin, counsel for the Bank demanded that Mr. Kapila produce unredacted billing invoices, revealing the descriptive entries for his time. Absent that information—to which the Bank is not entitled under Rule 26—the Bank declared it would cancel the deposition. Preferring not to upset the schedule the Parties had coordinated, the Plaintiffs produced the unredacted invoices in a matter of hours. Bank counsel raised no other issue regarding Mr. Kapila's production.

At the deposition, after less than 30 minutes of questioning, counsel for the Bank declared that he could not proceed with the deposition without access to the Center's entire internal ledger system, Navision—upon which Mr. Kapila did not rely in crafting his class certification declaration. The Plaintiffs made clear that the Bank is not entitled to that material, which has nothing to do with the structure of Mr. Kapila's methodology. Nevertheless, as an accommodation and professional courtesy, the Plaintiffs agreed to arrange for the Bank to have access to Navision—and to reproduce Mr. Kapila on November 6, 2026. The deposition was, therefore, suspended at the Bank's election. The Plaintiffs immediately conferred with members of the Trustee's administrative staff and arranged for the Bank to have access to Navision. On October 2, 2026, two days after the failed deposition, undersigned counsel wrote to the Bank and presented two different options for how it could access the Navision data. Six days passed in silence before the Plaintiffs followed up to state that, regardless of the Bank's continuing delay in accessing the Navision data, Mr. Kapila's deposition would not be reset again. It was only on that urging that the Bank finally responded. It defies explanation that the Bank *needs* this information to conduct

the deposition but ignored the immediate invitation to access it. More than that, it defies any proffer of diligent conduct that the Bank delayed accepting access to the data it demanded.

As for Ms. Ghiglieri, her deposition is set for October 20, 2026, by the Parties' mutual agreement, and the Plaintiffs readily agreed to extend the Bank's response deadline to 30 days after that deposition. The Bank has offered no explanation for why it needs anything more before responding to the Plaintiffs' Motion.

## II. Busy Schedules Are Not Good Cause.

The Bank attempts to excuse its failures on the basis that counsel is busy. It proffers that it would work "a material hardship on AMB and its counsel" to expect counsel to address both discovery and class certification simultaneously. Mot. at 6. The excuse fails to persuade. Lawyers—and courts—have busy schedules, indeed. But "the press of other business, unless unforeseeable or beyond counsel's control, is not adequate justification upon which to base an extension of the court's schedules." *M.R.K. Corp. v. United States*, 6 Cl. Ct. 544, 545 (Ct. Cl. 1984) (cleaned up). In the Eleventh Circuit, "[i]t is well established, . . . that the fact that counsel has a busy practice does not establish 'excusable neglect,'" let alone good cause. *Clinkscales v. Chevron U.S.A., Inc.*, 831 F.2d 1565, 1569 (11th Cir. 1987). Suffice it to say, the Bank—represented here by two large and competent firms—has found the time to litigate the issue of producing personnel files three times over in recent months.

## III. The Bank Has Not Shown, and Cannot Show, Good Cause to Modify the Schedule.

The Bank's failure to conduct this litigation diligently is dispositive of a showing of good cause. "This good cause standard is a rigorous one," and the Court is obliged "to focus not on the good faith of or the potential prejudice to any party, but on the moving party's diligence in meeting the deadlines it seeks to modify." *Corcho*, 2026 WL 823932, at *2.

The Plaintiffs have already agreed to an extension through 30 days after the second expert deposition. It is not the Plaintiffs intent, nor undersigned counsel's, to hamstring an opposing party and deny professional courtesies. But those courtesies have already been extended, and the Bank has not used them productively. This case is too fraught, the Plaintiffs are too vulnerable, and the need is too great to justify inexplicable delay.

Accordingly, the Plaintiffs respectfully request that this Court deny the Motion and hold the Bank to its current November 19, 2026, deadline.

Respectfully submitted on October 9, 2026.

By: */s/ Tal J. Lifshitz*
Tal J. Lifshitz, Esq.
Florida Bar No. 99519
tjl@kttlaw.com
Meaghan Goldstein, Esq.
Florida Bar No. 1024796
mgoldstein@kttlaw.com
Yarden (Jordan) Benatar
Florida Bar No. 1049274
jbenatar@kttlaw.com

**KOZYAK TROPIN & THROCKMORTON LLP**
2525 Ponce de Leon Blvd.
9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

*Counsel for the Plaintiffs and the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2026, I electronically filed a true and correct copy of the foregoing with the United States Bankruptcy Court for the Middle District of Florida using the Court's CM/ECF system, thereby serving all registered users in this case.

*/s/ Tal J. Lifshitz*
Tal J. Lifshitz, Esq.